[Civ. No. 20074. Fourth Dist., Div. Two. May 17, 1979]

BARRY T. SIMONS, Plaintiff and Respondent, v.
JAMES L. YOUNG et al., Defendants and Appellants.

**COUNSEL**

Wenke, Taylor, Schumacher & Evans and Raymond J. Ikola for Defendants and Appellants.

Barry T. Simons, in pro. per., and George S. L. Dunlop for Plaintiff and Respondent.

## Opinion

**KAUFMAN, J.**—Defendants (defendants or lessors) appeal from a declaratory judgment in favor of plaintiff (lessee) which, in effect, decreed specific performance of an option for renewal of the lease between the parties. The controlling question is whether the trial court erred in granting lessee equitable relief from his failure timely to exercise the option. We have concluded it did and that the judgment must be reversed.

### Facts

The facts are not in serious dispute. On October 14, 1974, lessee entered into a lease for two apartments located in a building at 448 South Coast Highway, Laguna Beach, with the owner of those premises, Harry Howard Company, represented by Mr. Harry Howard. The lease provided for an initial term of two years commencing February 1, 1975, and terminating January 31, 1977. Paragraph 5 of the lease entitled "Option to Renew" granted lessee four "distinct options to renew the term of said lease for additional periods of two (2) years per renewal," commencing February 1, 1977, and at two-year intervals thereafter terminating January 31, 1985. Paragraph 5 specified: "In order to exercise said option to renew the term of this lease as herein provided, Lessee must serve upon Lessor in writing, notice of election to renew said lease not later than three (3) months from the termination of said lease or any renewal thereof. Provided Lessee does exercise said option to renew the term of this lease as aforesaid, . . . Lessor shall renew this lease for an additional two (2) year period, terminating two (2) years from the date of expiration of the foregoing term upon the same terms, provisions and conditions as prevail during the first two (2) year term of this lease so far as applicable."

Rent, originally set at $8,400 for two years, payable $350 a month, was subject to cost-of-living increases based on the Consumer Price Index during both the original term and any renewal term "if the options as set forth . . . are exercised. . . ." All utility charges for water, gas and electricity were to be paid by the lessor. Lessee was given the right to make reasonable alterations, additions and modifications to the premises including some structural changes.

In the negotiations for the lease, lessee asked Mr. Howard if he could have a lease for 10 years, and Howard indicated he could. However,

lessee then requested an original term of two years with four two-year options to give himself more flexibility and limit the responsibility he was undertaking. Mr. Howard furnished his "standard" form of lease, but lessee, who is an attorney, indicated he preferred to prepare the lease himself. He turned the lease form supplied by Mr. Howard over to his law clerk, John Vodonick, and instructed Mr. Vodonick to revise the proposed lease in a manner that would be as favorable and flexible to lessee as possible. It was his desire "not to be tied in for the full 10 years if [he] didn't want to be." The lease thus prepared by lessee was presented to Mr. Howard, who accepted it as drafted except for changes required in the provision for cost-of-living increases in rent and the inclusion of a provision relating to the posting of notices of nonresponsibility. The provisions of paragraph 5 granting lessee the four consecutive two-year options and specifying the time and manner for exercise thereof were never discussed by lessee and Mr. Howard.

At the time the lease was executed the demised premises were residential apartment units and were not in good condition. It was lessee's intention to remodel the apartments into law offices. Mr. Howard was aware of lessee's intention, and both parties realized that the conversion to law offices would entail extensive renovation, repair and remodeling. From November 1974 to February 1975 and from June 1975 to November 1975, lessee converted the apartments into law offices by extensive remodeling and refurbishing.[1]

Lessee personally put into the remodeling over 1,000 hours of his time; his out-of-pocket costs exceeded $11,089.39. In addition, in exchange for labor, lessee forgave debts amounting to $6,500 and gave two years' free rent to one of his sublessees. If made at the time of trial, the cost of the "improvements" made by lessee to the premises would exceed $27,000. The remodeling was done, of course, with the knowledge and consent of Mr. Howard.

In December 1975, lessee approached Mr. Howard and submitted to him a proposed amendment to the lease by the terms of which he would be granted two additional five-year options in consideration of improvements theretofore made to the premises and to be made in the future. Mr. Howard refused to sign the proposed amendment. He slapped lessee on the back and stated: "Come on, you've got ten years already; what more

---

[1]Among other things, a reception area was created and a marble and tile mosaic floor was specially designed for and installed in the reception area. Additionally, wood paneling was installed in much of the leased premises.

do you want?" Mr. Howard had the impression that lessee was desirous of remaining as a tenant; he "didn't speak like a man that intended to move." However, Mr. Howard did not construe lessee's submission of the lease amendment as an election to exercise the option to renew; he construed it as an act of one who desired to improve his position. Lessee did not inform Mr. Howard that he intended to exercise his options, nor did Mr. Howard tell lessee that he would not require written notice of the exercise of the options as specified in the lease. In fact, no discussion ever took place between lessee and Mr. Howard in which lessee informed Mr. Howard that he intended to exercise any renewal option.

Thereafter, on April 1, 1976, Harry Howard Company agreed to sell and on May 27 conveyed the property to defendants, and as successor in interest to Harry Howard Company, defendants assumed the role of the lessor. When they purchased the property, defendants were aware that the lease granted lessee options to renew and expected that lessee would exercise the options.

Between their purchase of the property and November 1, 1976, one or more of defendants visited the leased premises several times. On one occasion the visit was simply for the purpose of meeting the tenants. The others were connected with ascertaining the suitability of an attic for remodeling as an apartment. During one visit defendant Young was taken on a tour of lessee's offices and lessee pointed out improvements that he had made and materials that were on the site for additional work. Lessee informed Young that he planned to install stained glass windows in the waiting room and asked Young about defendants' plans for remodeling the exterior of the building. Young informed lessee that the plans had not yet been developed, and lessee told Young that he wished to be notified of the plans so that his improvements would be designed consistently with the exterior improvements. At no time during any of these visits or at any other time prior to November 1, 1976, was the renewal of the lease discussed by lessee with Young or anyone else representing lessors.

The deadline for notice of exercise of the first renewal option, October 31, 1976, passed without lessee giving written notice of election to renew the lease. On November 18, 1976, lessors noted that the rent payment due on November 1 had not been received. In checking the lease to determine whether there had been a prepayment, lessors noticed that the period in which lessee could exercise the option in accordance with the lease had expired. Lessors went to lessee's law office in the leased premises to

inquire about the overdue rent payment and were advised by a secretary that lessee was out of the country but was expected to return within a few days. Thereafter on November 22, lessors notified lessee by letter that inasmuch as he had failed to exercise his option to renew the lease, he would be expected to vacate the premises by January 31, 1977. Lessee returned to the United States on November 24 and was immediately informed by his secretary of lessor's letter of November 22. The next day was Thanksgiving Day. The following day, November 26, lessee telephoned lessors and orally expressed his intention to renew the lease. The same day he drafted and mailed to lessors by certified mail a letter constituting a notice of his election to renew the lease. Lessors refused delivery of this letter. Lessee then drafted and mailed to lessors an identical letter dated December 1, 1976, which was received by lessors in due course.

When lessors refused to recognize lessee's "renewal" of the lease, lessee filed this action for declaratory relief, specific performance, injunction, relief from forfeiture and alternatively, for recovery on the basis of unjust enrichment. Lessors cross-complained against lessee and his sublessees for unlawful detainer seeking both possession of the premises and damages for holding over. Pending the action, by stipulation of the parties, lessee continued to pay rent under the terms of the lease at the rate of $407.35 per month without prejudice to lessors' right to relief by way of the cross-complaint. Although lessors requested a finding on the fair rental value of the leased premises, the court made none. However, a qualified real estate appraiser testified that the fair rental value of the leased premises was in the range of 70 to 75 cents per square foot per month and that based upon a determination that the premises contained 1,705 square feet, the fair rental value amounted to between $1,193 to $1,279 per month. Lessee himself testified that, in addition to his own office, he had three subtenants in the premises paying him a total of $1,000 per month rent.

Trial was to the court. The court found in accordance with the foregoing facts and further found that the lease is ambiguous because of the use of the word "from" in the specification of the period within which notice of the lessee's election to exercise the option could be given but that, "[n]o evidence was submitted on the origin of the use of the word. Whether it originated in the original Howard lease or in the lease drawn by plaintiff is not known. Because the case can be decided on the grounds of relief from forfeiture if there was any, further testimony will not be required to resolve the ambiguity." The court also found that lessee

would suffer extreme hardship if his right to renew the lease were forfeited as a result of his failure to notify lessors of his election to exercise the option to renew 90 days before the expiration of the lease; that lessors did not suffer any damage as a result of lessee's giving notice of intent to renew on November 26 or December 1, 1976, rather than on October 31, 1976; that lessee's delay in tendering his written notice of election to renew was not the result of grossly negligent behavior or a wilful or fraudulent breach of any duty; that lessee was not guilty of unclean hands; and that lessee "has performed all the terms and the conditions of the lease on his part to be performed precedent to his right to extend the lease for a period from February 1, 1977 to January 31, 1979." The court concluded that this was a proper case for relief from forfeiture; that lessors had no right to terminate the lease or evict lessee from the premises; and that plaintiff is entitled to specific performance of lessors' obligation to extend the lease for the period from February 1, 1977, through January 31, 1979, and for such additional time periods as lessee may be entitled to under the terms of the lease.

## Discussion

Before reaching the central question of the appeal whether the court erred in extending the option period by granting lessee equitable relief from his failure to give notice of his exercise of the option within the time agreed upon, there are a number of questions that must be addressed.

### Finding of Performance Unsupported by the Evidence

■ The trial court's finding that lessee performed all the terms and conditions of the lease requisite to his right to extend the lease for two years is, of course, completely unsupported by the evidence. There is no evidence whatever that lessee gave notice of any kind of his exercise of the option prior to November 26, 1976. The last date under which lessee was permitted to give such notice according to the terms of the lease was October 31.

### Waiver or Estoppel

■ There is no question but that upon sufficient evidence in an appropriate case a lessor may be found to have waived timely notice of his lessee's election to exercise an option to renew or be estopped to assert such a requirement embodied within a lease. However, this is not such a case. In the first place, the court did not purport to find any such waiver

or estoppel. Secondly, there is no substantial evidence of any waiver by lessors of the right to 90 days' notice of lessee's election to exercise the option to renew the lease, nor is there substantial evidence of any conduct on the part of lessors upon which lessee relied in failing to give notice.

Lessee urges that lessors were aware of the improvements that he had made and his intention to make further improvements and that the "conversations between [lessee] and Appellant Young regarding [lessee's] desire to make his improvements . . . consistent with those of [lessors] put [lessors] on constructive notice that [lessee] intended to remain on the premises for quite some time." Admittedly that is true, but it constitutes no evidence of either waiver or estoppel. Numerous cases may be found in which verbally or by conduct the lessee manifested an unambiguous intention to exercise the option to renew and by conduct the lessor recognized the lessee's intent and was held to have waived the requirement that *written* notice be given. Here, however, lessee did not give within the prescribed time either verbally or by conduct any unequivocal indication of his intent to exercise the option, and neither lessors nor their predecessor in interest did anything or said anything evidencing a waiver or upon which lessee relied in failing to give notice within the prescribed time. There is no evidence whatever that anything other than lessee's own forgetfulness or neglect caused him to fail to give notice within the prescribed time.

*Construction of the Notice Requirement as a Covenant Rather Than a Condition*

Lessee's contention that the notice requirement should be construed as a covenant rather than a condition is devoid of merit. The specification in a lease of a time by which notice of exercise by the lessee of an option to renew the lease must be given is universally considered to be a condition precedent to the exercise of the option. (See *Palo Alto Town & Country Village, Inc.* v. *BBTC Company,* 11 Cal.3d 494, 502 [113 Cal.Rptr. 705, 521 P.2d 1097].) Indeed, by the very nature of an option agreement it must be. As to the lessee-optionee, an option to renew the lease constitutes an irrevocable offer that can be converted into an enforceable contract only by acceptance on the terms specified in the offer. (*Palo Alto Town & Country Village, Inc.* v. *BBTC Company, supra,* 11 Cal.3d at pp. 498, 503-504; *Cicinelli* v. *Iwasaki,* 170 Cal.App.2d 58, 67 [338 P.2d 1005]; *Wilson* v. *Ward,* 155 Cal.App.2d 390, 394 [317 P.2d 1018]; *Auslen* v. *Johnson,* 118 Cal.App.2d 319, 321-322 [257 P.2d 664]; *Hayward Lbr. & Inv. Co.* v. *Const. Prod. Corp.,* 117 Cal.App.2d 221, 229

[255 P.2d 473]; *Wightman* v. *Hall*, 62 Cal.App. 632, 634 [217 P. 580].) Moreover, lessee did not promise to give notice of his election to exercise the option and was not bound to do so. Accordingly the notice provision in the lease cannot possibly be construed as a covenant.

*"Not later than three (3) months from the termination of said lease" Should Be Construed to Mean Not Later Than Three Months After the Termination of the Lease*

█ The provision requiring lessee to give notice of his exercise of the option to renew the lease required that notice be given "not later than three (3) months from the termination of said lease or any renewal thereof." Lessee urges that the quoted expression should be construed to mean that he was required to give notice of his exercise of the option to renew not later than three months *after* termination of the lease rather than three months *before* termination of the lease. Statement of the argument is its own refutation. Lessee's proposed construction would render the provision nonsensical. The lessor would not know prior to the end of the term of the lease and, indeed, not until 90 days thereafter, whether the lease was to be renewed or not, and the lease could be "renewed" after it had expired. (Cf. *Royal Grocery Co.* v. *Oliver,* 57 Cal.App. 278, 280 [207 P. 61].) Moreover, it is fundamental that a writing is to be construed with reference to and harmonizing all of its parts (Civ. Code, § 1641), and the construction advanced by lessee would be inconsistent with numerous other provisions in the lease. Paragraph 11 of the lease gives the lessor the right "at any time within thirty (30) days *prior* to the expiration of this Lease or renewal thereto [*sic*]" to enter the premises to place "To Let" or "To Lease" signs. (Italics added.) It is not likely the lessor would have been given that right if the lessee had the right to renew the lease for a period of 90 days after its expiration. Paragraph 8 of the lease gives the lessee the right to remove certain fixtures provided that such removal "shall be effected before the expiration of said term, or any renewal or extension thereof. . . ." Again, it is unlikely the lessee would be required to remove his trade fixtures, if he wanted to retain them, prior to the expiration of the term of the lease if he had the right to renew the lease for a period of 90 days after its term expired.

Relying on the court's "finding" that there was no evidence as to which party was responsible for the use of the word "from," lessee contends the ambiguity should be construed against lessor (see *Streicher* v. *Heimburge,* 205 Cal. 675, 683 [272 P. 290]; *McAulay* v. *Jones,* 110 Cal.App.2d 302, 306

[242 P.2d 650]). This contention is ill-founded. In the first place, in the absence of proof as to which party supplied the specific word, lessee would be presumed to be the author of the ambiguity inasmuch as the lease was drafted and prepared by him.[2] ▮ In any event, however, the rule that the language of a writing is to be interpreted adversely to the party who caused its ambiguity is resorted to only when the ambiguity is not resolved by other appropriate rules of interpretation. (See Civ. Code, § 1654.) Here, as already noted, other provisions of the lease make it abundantly clear that notice was to be given 90 days prior to expiration of the term of the lease.

*Equitable Relief*

Lessors assert that the trial court granted lessee relief from forfeiture under the provisions of Civil Code section 3275 which provides: "Whenever, by the terms of an *obligation,* a party thereto incurs a *forfeiture,* or a loss in the nature of a forfeiture, by reason of his failure to comply with *its* provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty." (Italics added.) Lessors then argue that section 3275 is inapplicable because by the very nature of an option contract the optionee incurs no forfeiture as a result of any failure to perform an obligation.[3] Lessee contends to the contrary and further asserts that the court's power to grant him equitable relief was not limited to the authority conferred by Civil Code section 3275 nor that conferred by Code of Civil Procedure section 1179,[4] but, rather, that the court could

---

[2]Mr. Howard testified that the lease form supplied by him required that notice of election to exercise an option to renew be given six months before expiration of the lease but that lessee requested the six-month notice to be reduced to three months' notice and that paragraph 5 of the lease was drafted by lessee to so provide.

[3]As a result of the request by this court for supplemental briefing, lessors also contend that the trial court erred in granting lessee relief from forfeiture without requiring him to himself "do equity" by paying the reasonable rental value of the premises rather than the rent specified in the lease. As lessors cogently put it: "[I]f equity is to rewrite one side of the contract, it ought to in fairness rewrite both sides of the contract." In this connection lessors point out that while the trial court found they were not injured by lessee's belated notice of exercise of the option to renew, in a practical sense that is not true, for they could have leased the premises to someone else for a rent in excess of $1,200 per month immediately upon expiration of the option period, and they argue that they should not be penalized because they did not actually run out and do that. In view of our conclusion, however, that the trial court erred in extending the option period by granting lessee equitable relief in the circumstances shown, we find it unnecessary to resolve this issue.

[4]Code of Civil Procedure section 1179 reads in pertinent part: "The Court may relieve a tenant against a forfeiture of a lease, and restore him to his former estate, in case of hardship, where application for such relief is made within thirty days after the forfeiture is declared by the judgment of the Court. . . . In no case shall the application be granted

afford him such relief under its general equity powers. We have concluded: (1) that Civil Code section 3275 is inapplicable; (2) that, while a court may grant relief on traditional grounds for equitable intervention such as fraud, accident or mistake, it may not grant equitable relief to extend an option period beyond that agreed to by the parties when, as here, the failure to timely exercise the option is due entirely to the inadvertence or neglect of the optionee to which the optionor in no way contributed.

## A. *Civil Code Section 3275*

■ The applicability of Civil Code section 3275 was considered and rejected in *Hayward Lbr. & Inv. Co.* v. *Const. Prod. Corp., supra.* The court said: "In both of the above cases, the court provided for relief against forfeiture by a liberal interpretation of forfeiture provisions in the lease itself, which is the sound and correct application of equitable principles. In the matter at bar, however, the judgment against defendant was based upon its failure to exercise the option as required by its particular terms. An option is an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option. Since the optionor is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option. (See *Wightman* v. *Hall,* 62 Cal.App. 632, 634 [217 P. 580].) By varying the terms of the option in his purported renewal, defendant in effect rejected the option, which became extinguished with the expiration of the term of the lease. Section 3275 is therefore inapplicable in these circumstances." (117 Cal.App.2d at p. 229.)

Although Civil Code section 3275 was not involved, in responding to a claim that the option price should be reimbursed, the court in *Sheveland* v. *Reed,* reasoned: " '. . . When that time [the time in which the option is to be exercised] expires, the option holder has received the full agreed equivalent of the price he paid for his option; and a refusal to give effect to an acceptance that is one minute late results in no forfeiture.' " (159 Cal.App.2d 820, 822 [324 P.2d 633], citing 1 Corbin on Contracts, § 273, p. 914, now 1A Corbin on Contracts, § 273, p. 593.)

The reasoning in the *Hayward Lbr.* and *Sheveland* cases is fully supported by the many cases discussing the nature of an option contract,

---

except on condition that full payment of rent due, or full performance of conditions or covenants stipulated, so far as the same is practicable, be made."

some of which have already been referred to in our discussion of lessee's contention that the notice requirement should be construed as a covenant rather than a condition. As succinctly stated by the court in *Wightman* v. *Hall, supra*: "A full appreciation of the nature of an option precludes the idea that courts may allow the optionee time beyond that limited in the writing in which to accept the offer of the other party. With the lapse of time the right to exercise the option automatically expires. . . . It is not a case of cancellation of a right, for the right only existed up to a certain time and then ceased by the mere passing of that time." (62 Cal.App. at p. 634.)

And in *Auslen* v. *Johnson, supra,* the court explained: "The nature of such an option [to purchase real property] is too well settled to require much discussion. . . . The optionor offers to sell the subject property at a specified price or upon specified terms and agrees, in view of the payment received, that he will hold the offer open for the fixed time. Upon the lapse of that time the matter is completely ended and the offer is withdrawn. If the offer be accepted upon the terms and in the time specified, then a bilateral contract arises which may become the subject of a suit to compel specific performance, if performance by either party thereafter be refused. It is futile to discuss, as appellant does discuss, the question as to whether or not the written option contained anything indicating that time was of the essence thereof. Such considerations have nothing to do with options. . . ." (118 Cal.App.2d at pp. 321-322; accord: *Wilson* v. *Ward, supra,* 155 Cal.App.2d at p. 394.)

In support of his contention that the trial court's affording him equitable relief was authorized by Civil Code section 3275, lessee relies heavily on the decision in *Holiday Inns of America* v. *Knight,* 70 Cal.2d 327 [74 Cal.Rptr. 722, 450 P.2d 42]. That case, however, does not assist lessee's cause. In fact, in its reasoning the court in that decision specifically explained that it is inappropriate to extend an option period beyond that the parties have bargained for.

The case involved an option contract in which the option period was five years and in which the option price was to be paid in annual installments over the five-year period. The contract provided that the failure to make any one of the installment payments on the option price on or before the prescribed date would automatically cancel the option. After paying the first two installments of $10,000 each, the optionee was apparently either one day or seven days late in tendering the third installment payment. The optionor declared the option cancelled. The

court held that equitable relief under Civil Code section 3275 would be appropriate, reasoning: "The parties agreed to bind themselves to a period of five years with the price payable in five installments. On the basis of risk allocation, it is clear that each payment of the $10,000 installment was partially for an option to buy the land during that year and partially for a renewal of the option for another year up to a total of five years. With the passage of time, plaintiffs have paid more and more for the right to renew, and it is this right that would be forfeited by requiring payment strictly on time." (70 Cal.2d at p. 331.)

Lessee would analogize the present case to *Holiday Inns of America* v. *Knight* by reasoning that part of each rental payment made by lessee was in part for rent and in part was consideration for the right to renew the lease. We see no flaw in the reasoning, but neither do we see that it leads to the result lessee advocates. So long as lessee paid consideration for the option to renew, and there is no question but that he did, the size, amount or nature of the consideration is irrelevant. As was pointed out in *Sheveland* v. *Reed, supra,* 159 Cal.App.2d at page 822, which was cited in the *Holiday Inns* decision (70 Cal.2d at p. 331): " '. . . When that time [the time in which the option is to be exercised] expires, the option holder has received the full agreed equivalent of the price he paid for his option. . . .' " That is true regardless of the amount or nature of the consideration.

Furthermore, in invoking the authority of *Holiday Inns,* lessee over-looks a vital distinction expressly noted by the court in that decision. The court stated: "Although the contract in the instant case is an option contract, the question is not whether the exercise of the option was timely, but whether the right to exercise the option in the future was forfeited by a failure to pay the consideration for that right precisely on time. Defendant's reliance on *Cummings* v. *Bullock* (9th Cir. 1966) 367 F.2d 182, and *Wilson* v. *Ward* (1957) 155 Cal.App.2d 390 [317 P.2d 1018] is therefore misplaced. *Both those cases dealt with the time within which an option must be exercised and correctly held that such time cannot be extended beyond that provided in the contract. To hold otherwise would give the optionee, not the option he bargained for, but a longer and therefore more extensive option.* In the present case, however, plaintiffs are not seeking to extend the period during which the option can be exercised but only to secure relief from the provision making time of the essence in tendering the annual payments. . . ." (70 Cal.2d at pp. 330-331; italics added.) Although the quoted language may not technically have consti-tuted a part of the holding of the *Holiday Inns* decision it is difficult to

imagine a more direct and specific indication of the court's view that it would be inappropriate to grant relief under Civil Code section 3275 to permit exercise of an option after the option period had expired.

Lessee's argument that he will suffer a forfeiture unless equitable relief is granted centers upon the fact that he expended substantial effort and money refurbishing and improving the property.[5] That assumes, however, that the improvements made by him will be a total loss to him if he is not permitted belatedly to exercise the option. There is no inevitability of that result. Lessee claims that a great part of the increase in the rental value of the premises is due to the improvements made by him. If he can prove that fact and show that lessors are unjustly enriched (and lessors admittedly purchased the property with the expectation that lessee would exercise his options) lessee may well be entitled to recover from lessors the unrecouped value of his improvements to the extent lessors are shown to have been unjustly enriched. Lessee sought relief on that basis, but, of course, the trial court did not reach these issues or make findings upon them, and they are not before us in this appeal.

We conclude that Civil Code section 3275 has no applicability to the failure of a lessee-optionee to exercise the option to renew his lease within the time agreed upon by the parties and specified in the lease.

B. *Relief under General Equitable Principles*

Although no similar California case has been called to our attention, courts in other states have, in some circumstances, granted a lessee-optionee equitable relief from a failure to exercise an option to renew his lease strictly within the time specified in the lease. The cases are collected and discussed in annotations at 44 A.L.R.2d 1359 et seq. and 27 A.L.R.

---

[5] A similar argument evoked from the Supreme Court of Virginia the following response: "While the financial loss that will be suffered by the lessee on failing to obtain a renewal of the lease will be substantial and perhaps serious to him, yet it is clear that his difficulty can in no wise be charged to the fault of the lessors and he alone is the author of his misfortune. Courts, even in equity, must respect lawful contracts made by competent persons . . . ." (*McClellan* v. *Ashley* (1958) 200 Va. 38 [104 S.E.2d 55, 58].) In *Koch* v. *H & S Development Company* (1964) 249 Miss. 590 [163 So.2d 710, 726], in declining to afford the lessee equitable relief, the court pointed out: "If there is a real hardship in the case it appears it rests upon the appellee for the reason it has been paid an extremely low rental for this valuable rental property. But, both parties executed a contract with their eyes open. Both lived by the contract and both should abide by it."

Arguably, similar responses might be made to lessee in the case at bench, who not only failed to give notice of his exercise of the option within the time agreed, but was the party who insisted on a two-year term with four two-year options rather than a ten-year term and who, in addition, drafted the lease.

981 et seq. The courts are divided on the answer to the question whether equitable relief is appropriate when the failure to exercise the option timely resulted entirely from the neglect or inadvertence of the lessee-optionee.

Lessee relies on those cases adhering to the view, apparently followed principally in Connecticut, New York and New Jersey, epitomized by the statement in *F. B. Fountain Co.* v. *Stein* (1922) 97 Conn. 619 [118 A. 47, 49-50, 27 A.L.R. 976]: "All authorities agree that such relief cannot be afforded where the failure has been due to willful or gross negligence. They differ as to whether such relief can be afforded in cases of mere negligence as by forgetfulness. . . . We think the better rule to be that, in cases of willful or gross negligence in failing to fulfill a condition precedent of a lease, equity will never relieve. But in cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." (Accord: *Galvin* v. *Simons* (1942) 128 Conn. 616 [25 A.2d 64, 66]; *Xanthakey* v. *Hayes* (1928) 107 Conn. 459 [140 A. 808, 812-814]; *Sy Jack Realty Co.* v. *Pergament Syosset Corp.* (1971) 27 N.Y.2d 449 [318 N.Y.S.2d 720, 267 N.E.2d 462, 463-464; *Jones* v. *Gianferante* (1953) 305 N.Y. 135 [111 N.E.2d 419, 420];[6] *American Houses* v. *Schneider* (3d Cir. 1954) 211 F.2d 881, 883 [44 A.L.R.2d 1352]; *Sosanie* v. *Pernetti Holding Corp.* (1971) 115 N.J.Super. 409 [279 A.2d 904, 907-908]; *Marjer* v. *Layfmen* (1947) 140 N.J.Equity 68 [53 A.2d 187, 188-190].)

■ Lessors rely on what is perhaps the majority view that equitable relief may be granted upon a showing of fraud, accident or mistake constituting traditional grounds for equitable intervention, but that equitable relief will not be granted where the lessee-optionee's failure to exercise the renewal option within the specified and agreed time was due entirely to his inadvertence or neglect and not contributed to by the lessor-optionor. Representative of this view are *Koch* v. *H & S Develop-*

---

[6]Lessee claims that Civil Code section 3275 was derived and is worded the same as New York Civil Code section 1831 under which he asserts the New York cases upon which he relies were decided. Our reading of the cases, however, discloses that only *Jones* v. *Gianferante, supra,* 111 N.E.2d at page 420, placed any reliance on statutory authority and the statutory provision there mentioned was section 1425 of the New York Civil Practice Act authorizing the assertion of equitable defenses in eviction proceedings by a landlord against the tenant.

*ment Company, supra,* 163 So.2d at pages 727-728, and *McClellan* v. *Ashley, supra,* 104 S.E.2d at pages 59-60.

In *McClellan* v. *Ashley* the court concluded: "The powers of courts of equity may not be arbitrarily exercised to alter the terms of a contract understandingly made in order to relieve an unfortunate situation caused solely by the negligent failure of the party seeking relief to observe its requirements. 'Hard cases must not be allowed to make bad equity any more than bad law.' " (104 S.E.2d at pp. 59-60.)

In *Koch* v. *H & S Development Company, supra,* the court reasoned: "Provided it is not illegal or against public policy, persons have and should have the right to contract with reference to their property, their interests therein, and the use thereof with other persons, and to rely upon the terms and conditions of the contract mutually agreed upon. Parties thus contracting should not be required to anticipate or guess how a panacean court of equity may 'feel' a valid contract should be construed or enforced, because one of the contracting parties may breach the simple conditions precedent, agreed to by both parties before the contract can be renewed. The written words of the contract afford greater certainty of intention, and more accurate compliance with and performance of the terms of the contracts by the parties thereto than do the retrospective, impassive conclusions of a court of equity. A court of equity should not be the first, but the last resort. It is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, [or] unconscionable results . . . . [¶] The rule is well recognized that equity will not relieve against a forfeiture in case of default of performance due to inadvertence, neglect, or ignorance to which lessor in no way contributed. . . . Equity will not relieve against mere forgetfulness and will not intervene where there is no fraud, accident or mistake on account of which the lessee neglected to avail himself of the option. [Citations.]" (163 So.2d at pp. 727-728.)

Lessee directs our attention to a statement by the California Supreme Court in *Streicher* v. *Heimburge, supra,* 205 Cal. 675, 681, in which the court referred to the *F. B. Fountain Company* case with apparent approval. The question before the court was whether mutual agreement by the parties upon the amount of rent was a condition precedent to the effectiveness of an option for renewal which provided that the rent for the renewal period would be as agreed between the parties. The court quite properly found it was not. However, in its discussion of covenants and

conditions the court, citing the *F. B. Fountain Company* case said, ". . . but here again a situation might be easily supposed where a court of equity would be warranted in decreeing the vesting of the new term notwithstanding the failure of the lessees to literally live up to said requirements."

We find the court's reference to the *F. B. Fountain Company* case inexplicable. The proposition for which it was cited was wholly unnecessary to the decision and barely germane to the discussion. Although we are bound to follow the ratio decidendi of controlling decisions of the California Supreme Court, we are not required to give precedential value to its dicta (*People* v. *Gregg,* 5 Cal.App.3d 502, 506 [85 Cal.Rptr. 273]; *Hess* v. *Whitsitt,* 257 Cal.App.2d 552, 556 [65 Cal.Rptr. 45, 32 A.L.R.3d 1297]) and it is our judgment that the dictum in *Streicher* making a passing reference to the rule in *F. B. Fountain Co.* v. *Stein* was not intended to be an authoritative statement of the rule in California. Moreover, the *Streicher* dictum would appear to be wholly inconsistent with the later and more direct statement previously quoted from *Holiday Inns of America* v. *Knight, supra,* 70 Cal.2d at page 330, that an option period may not be extended beyond that provided in the option contract.

Neither are we persuaded that the rule of *F. B. Fountain Co.* v. *Stein, supra,* ought to be adopted on principle. The only decision we have discovered in which any substantial attempt was made to explain the rule with reference to the nature of an option contract is *Xanthakey* v. *Hayes, supra,* 140 A. at page 812, where the court stated: "It is held by high authority that time is always of the essence of a contract of option. In support of this construction it is said the question 'is not one of condition implied in law, but of an express condition which must be strictly performed in order to hold the promisor liable.' [Citation.] That would be true of an option such as a mere option to buy real estate. It is not true, we think, as to all forms of contracts of option, nor of the provision for an option to renew in the lease before us. It has no relation to an option granted a lessee for the renewal of his lease upon his giving notice of his intention to renew in a stated manner and time such as is found in the lease made by these parties. 'All of the clauses of the instrument are to be construed together as a whole, so as to give effect to all of its parts.' [Citations.] The consideration of this lease was not merely the payment of the rental provided in the lease but that, plus the subsequent ownership by the lessor of all improvements made a part of the leased building by the lessee. The consideration of the lease to the lessee was not merely the use of the leased premises for the first term, but also the prospective use

in the renewal term. The promise on the part of the lessor to grant a renewal, and the prospect that the lessees would avail themselves of their right to a renewal was an indivisible part of the contract of lease, and formed a substantial consideration for it. The lessees were undoubtedly willing to pay more rent for a lease of business property near the center of Waterbury for a stated term with a privilege of renewal upon the same terms than they would have been for a single term, and willing to make more extensive improvements, and to agree that these should become the property of the lessor, because of the opportunity to secure a longer lease. With each payment of rent, and with every improvement made, the lessees were paying the consideration agreed upon for the renewal of the lease. Having completed the payment of the entire consideration which they had agreed to pay they ought not to be denied the equitable relief which would be accorded them in their situation in every form of contract other than one for an option."

We are unpersuaded. Unless there is some ambiguity in the option period, construing "all of the clauses of the instrument . . . together" adds nothing to its duration. And, as previously observed, it is futile to discuss the size, amount or nature of the consideration paid for the option, for when the option period that was bargained for by the parties has expired, the optionee has received everything for which he bargained and for which he gave consideration, regardless of the amount or nature of the consideration. (*Sheveland* v. *Reed, supra,* 159 Cal.App.2d at p. 822.)

Having rejected the only rationale offered for the rule epitomized by the *F. B. Fountain Company* decision and being persuaded that the rule represented by *Koch* v. *H & S Development Company, supra,* 163 So.2d 710, 725, and *McClellan* v. *Ashley, supra,* 104 S.E.2d 55, 59, is more consonant with the nature of an option contract as established by the California cases, we conclude that the trial court erred in granting lessee equitable relief and, in effect, extending the option period beyond that agreed to by the parties when lessee's failure to exercise the option timely resulted entirely from his own neglect or forgetfulness and was not contributed to by lessors.

*Disposition*

The judgment is reversed.

Tamura, Acting P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied June 12, 1979, and respondent's petition for a hearing by the Supreme Court was denied August 15, 1979.