[Civ. No. 33110. Fourth Dist., Div. Two. Feb. 21, 1985.]

LESNY DEVELOPMENT COMPANY, Plaintiff and Respondent, v. THOMAS WILLIAM KENDALL et al., Defendants and Appellants.

**1014**

---

---

**COUNSEL**

Marjorie Day, Lascher & Lascher and Wendy C. Lascher for Defendants and Appellants.

Graeber & Broderick, Charles C. Graebler, Reynolds, Reider & Bawden and D. Brian Reider for Plaintiff and Respondent.

---

**OPINION**

**KAUFMAN, J.**—This is the second time this case has been before us. On the first appeal (4 Civ. 23262) in an unpublished opinion filed April 20, 1982, we reversed with directions a judgment of specific performance of a contract for the purchase and sale of real property, returning the matter to the trial court for a determination of the amount of compensation, if any, the defaulting contract purchasers might be entitled to on account of unjust enrichment of the contract sellers resulting from expenditures and efforts by the contract purchasers that enhanced the value of the property or otherwise benefited the contract sellers.

When jurisdiction was restored to the trial court the matter was submitted on the basis of the evidence already adduced and briefs from the parties. Thereafter the trial court rendered a statement of decision and, ultimately, a judgment awarding the contract purchasers (plaintiff) $78,750, $18,750 compensation at the rate of $75 per hour for 250 hours of effort the court found plaintiff expended in obtaining approval of the tentative tract map and $60,000 on account of plaintiff's efforts, apparently part of the same 250 hours, resulting in the authorization of 8 additional subdivision lots over and above the number of lots originally anticipated. The $60,000 was arrived at on the basis of a figure of $7,500 per lot. Originally it was indicated plaintiff should recover costs of trial, but ultimately the parties were ordered to bear their own respective costs.

The contract sellers (defendants) again appeal, contending: the award is not supported by substantial evidence; no part of any compensation to plain-

tiff should have been based upon the increased value of the property but rather solely on the reasonable value to plaintiff of the services rendered; and defendants were the prevailing parties in the lawsuit and should have been awarded their trial costs.

*Facts*

Defendants were the owners of unimproved acreage in San Bernardino County. Although they had already engaged engineers and started on a program to subdivide the property, they were interested in selling some of the acreage for subdivision but had grown suspicious of real estate developers because of past experiences and did not want to tie their property up for any substantial time only to have the sale fall through.

After proposals back and forth, on January 16, 1976, plaintiff and defendants signed escrow instructions for the sale of approximately 18.67 acres for $210,000. The escrow was made contingent inter alia upon "Buyer obtaining approval of its tentative tract map."

No immediate cash deposit into escrow was required, but it was provided: "Within five days following San Bernardino County's approval of the buyer's tentative tract map, buyer will deposit the sum of $25,000.00 into escrow, which deposit is to be immediately released to seller without recourse. Said release is to be made regardless of the condition of title, regardless of the ultimate completion of this escrow, and without any liability whatsoever on Title Insurance & Trust Co. In the event buyer does not deposit the $25,000.00 within said five day period, seller reserves the right to cancel this escrow unilaterally."

The escrow instructions also provided that both buyer and seller should have the right to "examine engineering progress and question engineers and engineering data at reasonable intervals during escrow period to satisfy themselves that work is proceeding as fast as possible." It was further provided: "If for any reason other than seller's inability to convey title in conformance with preliminary title report as approved by buyer, this escrow does not close, Buyer agrees to reimburse seller for all costs of engineering incurred from December 1, 1975 to date of buyer's default."

The tentative tract map application was filed January 2, 1976, two weeks before the escrow instructions were actually signed, and plaintiff paid the application fee of $940. The map had been drawn up in December 1975 by the engineers defendants had engaged but it incorporated plaintiff's design criteria. The tentative tract map was approved by the San Bernardino County Planning Commission on March 18, 1976.

On March 23, plaintiff delivered a check for $25,000 to a branch office of the escrow holder other than the branch in which the escrow was pending. However, the check was accompanied by a letter stating that the funds could be released to defendants only after the escrow holder had received a grant deed from defendants and defendants had signed corrected instructions resolving a discrepancy in the closing date. The escrow instructions did not require defendants to deposit a deed until June 1. Plaintiff also requested that defendants deposit in the escrow a recordable memorandum of sale. When defendant Thomas Kendall arrived at the escrow office to pick up the $25,000 on the morning of March 24, he was told the funds could not be released because of the conditions on release imposed by plaintiff. He immediately wrote out a cancellation notice and thereafter a written notice of cancellation of the escrow pursuant to its terms was delivered to the escrow holder.

Plaintiff thereupon filed this suit for specific performance. The trial court granted specific performance as to 46 of the 69 lots in the tract[1] apparently in the belief that it would be inequitable not to do so. The court made findings that between December 1, 1975, and March 24, 1976, plaintiff through its officers and agents expended a substantial amount of time and money and incurred engineering costs in obtaining conditional approval of the tentative tract map and that the value of the property had increased because of the time and effort expended by plaintiff. The court concluded that plaintiff had thereby acquired "a valuable equitable interest in the subject real property" and that "the failure to grant specific performance to Plaintiffs would constitute a forfeiture of Plaintiffs' equitable interest in the subject property."

The court also found, however, that during the pendency of the action, defendants, at their sole expense, completed the installation of all subdivision offsite improvements including streets, curbs, sewers, underground utilities, flood control measures and walls required by the County of San Bernardino and prepared and recorded the final subdivision map, all of which the court found reasonably necessary to protect the value of all the lots in the tract. Defendants expended $412,619.16 in so doing and the court conditioned its judgment of specific performance upon plaintiff's paying to defendants two-thirds of that amount.

In reversing the judgment of specific performance this court rejected the trial court's conclusion that a denial of specific performance would work a

---

[1]The court found that following cancellation of the escrow defendants constructed houses on 23 lots, which benefited the entire tract, and it would be inequitable to grant specific performance as to those.

forfeiture or otherwise be inequitable. We stated in pertinent part: "Although there is a body of California law under which a court of equity is authorized to grant specific performance to prevent imposition of forfeiture on a party who has wilfully breached a contract, not every litigant is entitled to the relief. Before specific performance can be granted, the court must be assured that the decree will be as fair to the nonbreaching party as to the one who violated the agreement, and the party seeking equitable relief from forfeiture must demonstrate that it will otherwise suffer some tangible deprivation. Mere loss of the benefit of a bargain is no basis for relief from forfeiture, in the absence of other equitable considerations.

" . . . . . . . . . . . . . . . . . . . . . . .

"This case does not involve the sufferance of any sort of penalty or damages by plaintiff, nor the retention of a down payment after the deal fell through, nor the sacrifice of any improvements plaintiff had made on defendants' property. The contract was wholly executory at the time defendants cancelled; plaintiff had invested nothing other than the application fee for the tract map approval, forfeiture of which could be more fairly redressed by requiring defendants to pay it back as a condition of upholding the cancellation.

" . . . . . . . . . . . . . . . . . . . . . .

"Thus, plaintiff is not entitled to restitution because it never paid any money, other than the nominal application fee; the only question is whether the trial court's discretion could properly be exercised to give the deliberately non-performing plaintiff the benefit of its bargain while at the same time excluding defendants from theirs.

"As a matter of both logic and principle, such relief would be inappropriate here because, in order to give plaintiff the benefit of its bargain, i.e., the right to purchase land with an approved tract map, the court necessarily deprives defendants of the benefit of the bargain they made, i.e., the unconditional right to receive a $25,000 payment on March 23, 1976, as assurance against the very sort of delay which happened.

"Plaintiff's position is not improved by the fact that its employees devoted a certain amount of labor to the project. In the first place, as one of the findings suggests, some of that work was done before the contract was signed and thus could hardly be deemed either to be for anyone's benefit but plaintiff's or to be part of the performance of that later-made contract. In other words, plaintiff took its chances on that. Second, even after the contract was signed, the nature of much of the work had nothing to do with

tract map approval,[7] instead involving such things as designing houses to be built on the land, making market surveys and the like. In addition, the record reflects that defendant Thomas Kendall also devoted effort and expense to securing map approval; yet his contribution was disregarded except insofar as the contract called for reimbursement of the *engineering* fees only.

"Such factual considerations aside, this court has recently rejected a contention to the effect that a litigant's voluntary devotion of effort to enhance the value of a contract he later breaches justifies equitable relief from forfeiture. In *Simons* v. *Young* (1979) 93 Cal.App.3d 170 [155 Cal.Rptr. 460], the trial court had granted specific performance of an option for renewal of a lease after the lessee failed to exercise the option on time. In reversing, Justice Kaufman stated: 'Lessee's argument that he will suffer a forfeiture unless relief is granted centers upon the fact that he expended substantial effort and money refurbishing and improving the property. That assumes, however, that the improvements made by him will be a total loss to him if he is not permitted belatedly to exercise the option. There is no inevitability of that result. Lessee claims that a great part of the increase in the rental value of the premises is due to the improvements made by him. If he can prove that fact and show that lessors are unjustly enriched (and lessors admittedly purchased the property with the expectation that lessee would exercise his options) lessee may well be entitled to recover from lessors *the unrecouped value of his improvements to the extent lessors are shown to have been unjustly enriched.*' (*Id.,* at p. 185, fn. omitted, italics added.)

"Here, no improvements were made. Assuming that plaintiff's employees were entitled to compensation at a rate as high as $100 per hour for the services they performed, they would have been entitled to no more than $25,000 payment for the 250 hours of work plaintiff's representatives identified. Their judgment, however, awards them real property valued at $368,000 (46 lots worth $8,000 per lot) for which they are required to pay only $140,000. Because it was plaintiff who breached the contract, not defendants, it is unreasonable to permit such a windfall. If the goal of equity is to prevent unjust enrichment, that goal will be far better achieved by ordering defendants to reimburse plaintiff the value of their services, rather than turning the land over to plaintiff."

The dispositional order at the end of the opinion, however, read in relevant part: "The judgment is reversed with directions to the trial court to

---

"[7]The trial court apparently theorized, because plaintiff's efforts assisted with tract map approval, and because that approval increased the value of the land markedly, plaintiff should be permitted to take advantage of the increase in value. The irony of that position will be discussed shortly along with its fallacy."

determine the amount of and award to plaintiff the value of any enhancements of or contributions to the value of the property made by plaintiff, if any."

The statement of decision following the proceedings in the trial court after remand reads in pertinent part: "The remand required the Court to make a determination in dollars of the enhancement and/or contribution by Plaintiff to the subject property. The Plaintiff contributed to or enhanced the property in two ways, to wit: [¶] First, Plaintiff in reliance on its escrow agreement participated in the processing of the tract map and the work with the engineers thereon, the testimony established two hundred and fifty (250) hours of time expended by Plaintiff. This effort is a contribution to the property by way of obtaining the tract map. The tract map itself is an enhancement to the subject property . . . . [¶] The experience and expertise of the parties working for Plaintiff established that seventy-five dollars ($75.00) an hour is reasonable.

"Second, in reliance on the escrow agreement during the processing of the map, contact with the Metropolitan Water District was by Rudy Lowy. The engineers had no direct contact with the Water District. The testimony is that only an eighty (80) foot right-of-way obtained by Mr. Lowy would be considered by the County. This resulted in additional lots, between seven (7) and nine (9), according to testimony. The use of eight (8) lots is reasonable. Mr. Kendall testified that each lot was worth twenty-five thousand dollars ($25,000.00) to thirty-two thousand dollars ($32,000.00).

". . . . . . . . . . . . . . . . . . . .

"The Court found the value of services to be eighteen thousand seven hundred fifty dollars ($18,750.00), and the value of the eight (8) lots to be sixty thousand dollars ($60,000.00), or seven thousand five hundred dollars ($7,500.00) per lot. This is only a portion of the total value of the eight lots."

*Contentions, Issues and Discussion*

I. *The Award of $60,000 Based on Increased Value Attributable to the Eight Additional Subdivision Lots*

Defendants contend the $60,000 award based on the eight additional lots was improper on numerous bases. We need not consider them all because several are correct and are dispositive.

■ Preliminarily, we reject defendant's contention that it is the law of the case that plaintiff could be compensated no more than $25,000 at the

outside. It is true that our opinion on the earlier appeal contained the statement: "Assuming that plaintiff's employees were entitled to compensation at a rate as high as $100 per hour for the services they performed, they would have been entitled to no more than $25,000 payment for the 250 hours of work plaintiff's representatives identified." However, that statement was just part of a hypothetical statement intended to demonstrate that granting specific performance was not required to avoid inequity. The figure of $100 per hour was simply assumed for purposes of illustration. Moreover, the opinion had just stated that the record showed that a good deal of the services included within the 250 hours claimed was performed either before the contract was entered into or purely for the benefit of plaintiff.

 Getting to the substance of the problem, defendants contend that our opinion on the earlier appeal made it plain that what plaintiff was to receive, if anything, was reimbursement for the value of their services based on the reasonable value of the services to plaintiff, not the incremental value that may have been added to the property as a result of those services. They point out that plaintiff was the defaulting party and that both our opinion and applicable principles of law pertaining to unjust enrichment establish that whatever compensation is to be paid plaintiff is to simply make it whole to avoid injustice, not to award it the benefit, in whole or in part, of the bargain in respect to which it was the breaching party. (See generally, *Bird* v. *Kenworthy* (1954) 43 Cal.2d 656, 660 [277 P.2d 1]; Code Civ. Proc., § 871.5 and Legislative Committee Comment—Assembly 1968 Enactment thereto; Rest. Restitution, § 42.) Specifically, defendants point to those portions of the opinion on the earlier appeal in which we referred to and quoted the language from *Simons* v. *Young* (1979) 93 Cal.App.3d 170, 185 [155 Cal.Rptr. 460]; in which we illustrated what we had in mind as the appropriate method of fixing the amount of compensation by speaking of a hypothetical figure of $100 per hour for the 250 hours plaintiff claimed to have expended, and in which we stated: "Because it was plaintiff who breached the contract, not defendants, it is unreasonable to permit such a windfall. If the goal of equity is to prevent unjust enrichment, that goal will be far better achieved by ordering defendants *to reimburse plaintiff the value of their services,* rather than turning the land over to plaintiff." (Italics added.)

Plaintiff, on the other hand, appears to contend and the trial court appears to have believed that this question was resolved by the dispositional order in our earlier opinion reversing the judgment "with directions to the trial court to determine the amount of and award to plaintiff the value of *any enhancements of or contributions to the value of the property* made by plaintiff, if any." (Italics added.) Plaintiff points out that when the judg-

ment of the trial court is reversed with directions, the jurisdiction of the trial court after remittitur is limited to carrying out the directions of the appellate court. (*Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 655 [242 P.2d 1]; *Frankel* v. *Four Star International, Inc.* (1980) 104 Cal.App.3d 897, 902 [163 Cal.Rptr. 902]; *Puritan Leasing Co.* v. *Superior Court* (1977) 76 Cal.App.3d 140, 147 [142 Cal.Rptr. 676].)

■ Read separately and apart from the body of the opinion, the dispositional order could be taken as authorizing the trial court to make some award for enhanced value of the land. What we intended, however, was simply to identify for the trial court and the parties which of the 250 hours of claimed services could be compensated—only those that were performed as a result of the contract and redounded to the benefit of defendants. In other words, as a condition precedent to being eligible for compensation, the services must have resulted in benefit to defendants—i.e., enhanced the value of the property. (See *Wood* v. *Henley* (1928) 88 Cal.App. 441, 462 [263 P. 870].) Our use of the expression "any enhancements of or contributions to the value of the property made by plaintiff, if any," was intended to preclude compensation for those services we had earlier referred to in the opinion as having been performed before the contract was entered into and those which though performed thereafter were for the benefit of plaintiff, not defendants. However, to our regret and with apologies to all concerned, we must acknowledge the language of the dispositional order was ambiguous.

■ Where the directions to the trial court are ambiguous and in need of interpretation, however, they must be interpreted in light of the reasoning and holdings found in the body of the opinion. (*Raun* v. *Reynolds* (1860) 15 Cal. 459, 468; *Puritan Leasing Co.* v. *Superior Court, supra,* 76 Cal.App.3d at pp. 147-148; see also *Atchison etc. Ry. Co.* v. *Superior Court* (1939) 12 Cal.2d 549, 554-555, 557 [86 P.2d 85]; *Frankel* v. *Four Star International, Inc., supra,* 104 Cal.App.3d 897, 902.) ■ An interpretation of the dispositional order in our earlier opinion as authorizing plaintiff, as the breaching party, to recover compensation based on incremental value to the property as opposed to the reasonable cost to plaintiff of the services claimed to have been rendered would be virtually inconsistent with and contrary to both the holding in our opinion that plaintiff was not entitled to specific performance on account of the services it allegedly performed and the reasoning of our decision which we have quoted above at some length.

Defendants are also correct that under applicable principles of unjust enrichment plaintiff should recover at most its reasonable costs or the reasonable value to it of its services, not the increase in value to the property that

may have resulted from its services. ■ Although we have found no case directly in point, the situation is very much analogous to that in which one person makes improvements to the property of another under the reasonable, good faith mistaken belief that he or she is the owner or that he or she is under an obligation to do so. Although early decisions denied any recovery of compensation at all, the better and more equitable rule is embodied in section 42 of the Restatement of Restitution. Subsection (1) of section 42 states that when the circumstances are appropriate for the allowance of restitution, the amount of restitution should be the amount "that the land has been increased in value by such improvements, or for the value of the labor and materials employed in making such improvements, *whichever is least.*" (Italics added.) Similarly, subsection (2) of section 42 pertaining to personal property provides that when restitution is authorized the amount should be "the added value or the value of the services, *whichever is least* . . . ." (Italics added.) (Cf. Code Civ. Proc., § 871.5 and legis. committee com.—Assem. 1968 Enactment thereto.)

■ Finally, if compensation to plaintiff were based on the increased value of the property, which is another way of saying the benefit to defendants, there would have to be offset against the increase in value added by plaintiff's efforts the monetary value of the detriment to defendants in having their property tied up for some six years during plaintiff's unsuccessful attempt to obtain specific performance, their unrecovered attorney fees and costs for the litigation, and the taxes and other expenditures made by defendants to preserve the property. (Cf. Code Civ. Proc., § 871.5 and legis. committee com.—Assem. 1968 Enactment thereto; *Raab* v. *Casper* (1975) 51 Cal.App.3d 866, 875-876 [124 Cal.Rptr. 590].) No such offset is reflected in the judgment.

In view of our conclusions with respect to the $18,750 award, *infra,* it makes little difference, but we also observe that the court's awarding $60,000 on account of some of the same services it purported to compensate at the rate of $75 per hour resulted in an award of duplicate damages not authorized in any event.

II. *The $18,750 Award for 250 Hours of Services*

■ Defendants are correct that the court's finding plaintiff expended 250 hours in obtaining approval of the tentative tract map which enhanced or improved the property is not supported by the evidence. While our observations in the opinion on the earlier appeal can hardly be termed law of the case, the 250 hours the trial court purported to compensate here are the same 250 hours we referred to in the earlier opinion. We stated with respect to those 250 hours of services: "In the first place, as one of the findings

suggests, some of that work was done before the contract was signed and thus could hardly be deemed either to be for anyone's benefit but plaintiff's or to be part of the performance of that later-made contract. In other words, plaintiff took its chances on that. Second, even after the contract was signed, the nature of much of the work had nothing to do with tract map approval, instead involving such things as designing houses to be built on the land, making market surveys and the like." (Fn. omitted.)

No new evidence was presented in the proceedings following remand, and the facts have not changed. Nevertheless, and notwithstanding what appears to be rather plain language in the earlier opinion, the trial court awarded plaintiff $75 per hour for all 250 hours of the claimed services. Rather obviously, such an order cannot stand.

█ Preliminarily, we must address defendants' contention that the hourly rate of $75 is not supported by substantial evidence. Insofar as the services of Rudolph Lowy and Allan Lowy are concerned we do not agree. While the evidence might have been more satisfactory, evidence of their professional qualifications and experience was presented and the court could reasonably determine the value of their services to plaintiff to be $75 an hour. We agree with defendants, however, that using the same $75 per hour figure for compensation of plaintiff's office staff was not justified by substantial evidence, or indeed any evidence at all. However, as shall become apparent in view of our other conclusions the point is moot.

█ The evidence concerning the 250 hours of services claimed to have been rendered by plaintiff is as follows. The office staff spent approximately 80 hours between January 2 and March 24, 1976. That 80 hours was described as the "amount of time spent largely by [an] architect in designing preliminary floor plans and house plans for use in this project." Obviously, some of that work was performed before the contract was entered into. More importantly, however, that work was for the benefit of plaintiff if it acquired the property and was not directed at and did not result in plaintiff's obtaining approval of the tentative tract map.

Allan Lowy, a vice president of plaintiff, testified he spent approximately 10 hours "working over [the] design criteria with our architect." He spent an additional 30 hours evaluating competitors' projects. He also estimated he had spent approximately 30 hours in meetings with defendants or their representatives and with a title officer. The first 40 hours mentioned and the time spent in meetings with defendants or their representatives were manifestly for the benefit of plaintiff should it acquire the property and did not contribute to the approval of the tentative tract map. While some of the time spent in meetings with the title officer might have contributed to approval

of the tentative tract map, there is no evidence that that is so or even how many hours were so spent. The burden of proving that its services conferred a benefit upon defendants was on plaintiff. (Cf. Code Civ. Proc., § 871.3; *Honey* v. *Henry's Franchise Leasing Corp.* (1966) 64 Cal.2d 801, 805 [52 Cal.Rptr. 18, 415 P.2d 833]; *Baffa* v. *Johnson* (1950) 35 Cal.2d 36, 39-40 [216 P.2d 13]; *Barkis* v. *Scott* (1949) 34 Cal.2d 116, 120 [208 P.2d 367].)

Rudolph Lowy, one of plaintiff's principals, testified he spent in excess of 100 hours on the project. Twenty-four hours were expended in conducting a microeconomic survey of the area. The survey was conducted in January 1976, but Mr. Lowy could not recall whether it was done before or after the contract was executed on January 16. Mr. Lowy testified he spent another 18 hours reviewing preliminary house plans and deciphering the market research data prepared from the field studies conducted by plaintiff. He spent another 18 hours attending meetings at county offices, including travel time. The balance of his efforts (approximately 40 hours) was spent in "Physical meetings that took place out at the property site; conversations at county offices, not in hearings, but in reviewing sewer, water, master plan and other data." Mr. Lowy testified that these latter efforts "would be required for either the tentative [tract map] *or for subsequent development.*" (Italics added.)

The microeconomic survey of the area was obviously directed at economic feasibility of plaintiff's proposed development and was not instrumental in plaintiff's obtaining approval of the tentative tract map. So, too, the 18 hours Mr. Lowy spent reviewing preliminary house plans and deciphering market research data. Conceivably, the 18 hours Mr. Lowy spent attending meetings at county offices and some of the remaining 40 hours spent in "physical meetings" might have been related to plaintiff's obtaining approval of the tentative tract map, but there is no evidence of that causal relationship. Mr. Lowy himself testified the latter 40 hours would be required for either the tentative tract map or subsequent development. The latter, of course, would have been for plaintiff's benefit should it acquire the property and would not be compensable.

As already stated, plaintiff had the burden of proving its services were performed at such time and were of such nature as to be compensable under the directions contained in our opinion in the earlier appeal. Manifestly, it failed to do so.

III. *Trial Costs*

 Code of Civil Procedure section 1032, subdivision (b), provides in substance that the defendant in an action involving the title or possession of

real estate is entitled to recover the costs of trial "upon a judgment in his favor." The question is whether the judgment was in defendants' favor. Manifestly, it was. Plaintiff did not prevail in its suit for specific performance. It was determined ultimately to be the party that breached the contract, and any award of compensation to it is simply a matter of avoiding injustice by reimbursing it for its expenses and outlays which inured to the benefit of defendants. In no way can plaintiff be viewed as the prevailing party in the action and it cannot be said that the judgment was other than in favor of defendants. Defendants should therefore have been awarded their costs of suit.

### Disposition

The foregoing conclusions would normally lead to reversal of the judgment and, no doubt, further proceedings in the trial court with the attendant possibility of yet another appeal. However, defendants have identified a maximum of 58 hours of services rendered by plaintiff that might possibly have been compensable, and, in an effort to put an end to this litigation and avoid further proceedings, we have determined to render a conditional appellate judgment modifying and affirming the judgment of the trial court, reversing the judgment only if the condition fails.

Accordingly, it is ordered that upon condition that defendants file with the clerk of this court a written consent thereto within 12 days of the date this opinion is filed, the judgment of the trial court is modified to provide that plaintiff shall take nothing on account of its action save and except the sum of $4,690[2] which plaintiff shall have and recover from defendants provided, however, that defendants shall have an offset against said $4,690 in the amount of their reasonable trial costs to be fixed by the trial court if the parties are unable to agree. Upon said condition the judgment as modified is affirmed. Otherwise, the judgment is reversed. Defendants shall recover costs on appeal.

Morris, P. J., and McDaniel, J., concurred.

---

[2]The $4,690 represents 50 hours of service at the rate of $75 per hour plus $940 paid by plaintiff in connection with the application for approval of the tentative tract map.