[No. B012854. Second Dist., Div. Four. Dec. 31, 1985.]

BEKINS MOVING & STORAGE COMPANY, Plaintiff and Appellant, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA et al., Defendants and Respondents.

## COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, Evans & Harter, Robert L. Ivey, Ellen Hodgson Brown, Hufstedler, Miller, Carlson & Beardsley and Otto M. Kaus for Plaintiff and Appellant.

Robert S. Manns, G. Richard Green and Carol R. Mitchell for Defendants and Respondents.

## OPINION

**WOODS, P. J.**—Bekins Moving & Storage Company (Bekins) appeals the summary judgment granted in favor of the Prudential Insurance Company of America (Prudential) and Property Management Systems, Inc. (PMS). Bekins contends that notwithstanding its failure to exercise its option to renew its lease in accordance with the terms of the lease agreement, it is entitled to equitable relief, based on the following grounds:

1. Bekins' actions in relation to the leased properties provided sufficient notice to Prudential of Bekins' intent to renew. Hence, Bekins was in substantial compliance with the requirements of the renewal option.

2. Where, as here, the delay was slight, the loss to lessor was small, and denial of relief would result in such hardship to lessee as to make it unconscionable to enforce literally the condition precedent to the lease, equity should intervene. (*F. B. Fountain Co.* v. *Stein* (1922) 97 Conn. 619 [118 A. 47, 27 A.L.R. 976].)

3. California law protects Bekins against a forfeiture.

We disagree and affirm.

In 1971, Bekins leased an office building on Flower Street from Prudential's predecessor in interest. The parties entered into a 10-year written lease agreement with options to renew. The initial term of the lease was to expire in April 1981. The monthly rental agreed upon was $4,950.

By subsequent amendment the parties agreed to extend the initial term of the lease to December 31, 1981. Bekins was also given the option to renew the lease for three 5-year periods, provided that it gave Prudential written notice of its intent to renew no less than six months prior to the expiration of each term of the lease.

On timely and proper exercise by Bekins of its option to renew, the monthly rental for the property was to remain at $4,950 subject only to an upward adjustment in proportion to the increase, if any, in the consumer price index.

Bekins also obtained a long-term lease for the building across the street from its offices on Flower Street. After that, Bekins operated the two buildings as one office complex and made substantial improvements in both buildings.

In 1977, the leased properties were purchased by Prudential and were thereafter managed by PMS.

In 1980, by petition to the city council, Bekins changed the name of the street leading to the leased properties to Bekins Way.

Between February and June 1981, there was an exchange of letters between Mr. Gallego, the legal counsel for Bekins, and Mr. Moore, a senior property manager for PMS, regarding the installation by Bekins of certain air conditioning equipment in the Flower Street property. The installation cost Bekins $61,000.

Under the lease agreement, Prudential would have the right to require Bekins to remove any improvements made by it on expiration of the lease, or leave them on the premises. During the course of correspondence regarding the air conditioning, Mr. Moore specifically reminded Mr. Gallego of this provision, stating: "All terms and conditions of Paragraph 6 of the lease covering the 777 Flower Street property shall apply to this installation."

Bekins failed to give written notice before June 30, 1981, of its intent to renew the Flower Street lease. PMS was aware of Bekins oversight as evidenced by Mr. Moore's letter to his superior. Bekins broached the matter of renewal of the lease for the first time, in September 1981. A meeting was held at Mr. Gallego's request, between Mr. Gallego and representatives of PMS, to discuss the Flower Street lease. At that meeting, Mr. Gallego acknowledged that Bekins had neglected to exercise its option to renew its lease in writing as required. Nevertheless, he stated that Bekins wanted Prudential to know that "Bekins of course intended to remain in the building through the option term."

Mr. Moore immediately informed Mr. Gallego that the lease would expire on December 31, 1981, and for continued occupancy of the premises by Bekins beyond that date, Prudential would require a new agreement.

A couple of days later, Mr. Gallego wrote to Mr. Moore purporting to exercise Bekins' option to renew its lease. Mr. Gallego stated in his letter dated October 1, 1981, that the previous exchange of correspondence regarding the air conditioning constituted sufficient notice of Bekins' intention to continue to occupy the premises under the original terms.

In his reply, Mr. Moore reiterated that Bekins had not exercised its option to renew its lease. He elaborated:

"(1) . . . in order for The Bekins Company to have exercised said Option to Renew, it was required that said exercise of option be in writing, be delivered personally or by certified or registered mail, and be delivered at least six (6) months prior to December 31, 1981. *None of these criteria were met.*

"(2) At no time prior to our conversations of the past two weeks did I, or any other representative of Property Management Systems, know of Bekins 'desire to remain on the premises under the original terms of the lease'. Furthermore, it was specifically communicated to you in our recent meeting

that Bekins had failed to exercise the subject Option to Renew and that the lease covering the referenced property will expire on December 31, 1981.

"(3) The installation of air conditioning equipment on the referenced property has nothing to do with the subject Option to Renew. None of my conversations with you concerning the air conditioning equipment or the letters you refer to in your letter of October 1, 1981 ever dealt with or referred to Bekins exercise of the subject Option to Renew.

"If you are interested in discussing a new lease on the subject property, we will be happy to sit down and discuss the situation with your representatives. However, I again reiterate the facts—The Bekins Company lease on the referenced property will expire on December 31, 1981." (Italics in original.)

In November 1981, Bekins and Prudential entered into a new five-year lease agreement regarding the Flower Street property, which increased the rent from $4,950 per month to $18,900 per month. The initial term of the lease ran from January 1982 to December 31, 1986, with Bekins having the option to renew for two additional five-year periods. Under this agreement, the rent was subject to further increases, at the end of each five-year period.

Bekins filed a complaint against Prudential and PMS in which it sought a judgment declaring the 1971 lease, together with its options, to be in full force and effect, and declaring the new lease executed in November 1981 to be void. Bekins also sought restitution of claimed excessive rent paid by it, as well as damages for breach of contract.

Both sides moved for summary judgment. After a hearing, the trial court granted summary judgment to Prudential and PMS, and denied the motion for summary judgment by Bekins.

This appeal followed.

I

Bekins' plea for equitable relief finds no support in California case law.

"'An option is an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option. Since the optioner is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option.'" (*Simons* v.

*Young* (1979) 93 Cal.App.3d 170, 182 [155 Cal.Rptr. 460], quoting *Hayward Lbr. & Inv. Co.* v. *Const. Prod. Corp.* (1953) 117 Cal.App.2d 221, 229 [255 P.2d 473].)

In order to avail himself of the right to renew a lease as provided for by a lease option, a tenant must apprise the lessor in unequivocal terms of his unqualified intention to exercise his option, within the time, in the manner and on the terms stated in the lease. (42 Cal.Jur.3d, Landlord and Tenant, § 291, p. 328; *Hayward Lbr. & Inv. Co.* v. *Const. Prod. Corp., supra,* 117 Cal.App.2d at pp. 227-228.)

Bekins concedes that it failed to timely exercise its option on the Flower Street building. Bekins claims, however, that its actions in relation to the leased properties constituted actual notice to Prudential of its intent to renew, and that there was substantial compliance with the requirements of the renewal option.

Bekins contends that the substantial improvements made by it to the two properties just before the option date was notice to Prudential of its intent. Conduct by a lessee, alone, is insufficient to warrant equitable relief upon failure by lessee to timely exercise its option to renew a lease. There has to be substantial evidence of conduct by the lessor upon which lessee relied in failing to give notice. There is absolutely no showing in the instant case that Prudential, by its conduct, waived the requirement of written notice. (*Simons* v. *Young, supra,* 93 Cal.App.3d at p. 179.)

Bekins' reliance on the doctrine of substantial compliance is also futile. The doctrine of substantial performance comes into play only when there exists a binding contract. An option is but an offer which expires by its own terms if it is not accepted within the time prescribed. (*Rosenaur* v. *Pacelli* (1959) 174 Cal.App.2d 673, 676-677 [345 P.2d 102].)

Consequently, there can be no question of substantial compliance with the terms of a contract that never came into existence.

## II

Bekins asks this court to be guided by cases decided in other states which have granted equitable relief. Primarily it relies on *F. B. Fountain Co.* v. *Stein, supra,* 118 A. 47, wherein the court said, in granting equitable relief, that "in cases of mere neglect in fulfilling a condition precedent of a lease, . . . equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the

tenant as to make it unconscionable to enforce literally the condition precedent of the lease." (*Id.*, at p. 50.) The *Fountain* court acknowledged that under the better rule equity would never relieve in cases of willful or gross negligence in failing to fulfill a condition precedent of a lease. (*Ibid.*)

Bekins asserts that all the prerequisites stated in *Fountain* for granting equitable relief are present in the instant case. Even conceding arguendo the accuracy of this claim,[1] we are not persuaded by *Fountain* or the line of cases that have followed it.[2] We prefer the reasoning reflected in those cases which hold that equitable relief is not available, where failure to renew a lease within the time prescribed was due solely to lessee's negligence. (See Annot. (1984) 27 A.L.R.4th 278-280.)

We also disagree with Bekins' assertion that with the exception of *Simons* v. *Young, supra,* California cases follow the *Fountain* doctrine.[3] *Streicher* v. *Heimburge* (1928) 205 Cal. 675 [272 P. 290], is cited as an example. In *Streicher,* the lease option had been properly exercised but the rent for the renewal period was to be agreed upon by the parties. The issue before the court was whether reaching an agreement as to the rent was a condition precedent to the effectiveness of the option renewal. The court found it was not and stated: "We may concede also that the right of renewal depended upon the giving of notice to the respondent within the time and in the manner stated in said paragraph, but here again a situation might be easily supposed where a court of equity would be warranted in decreeing the vesting of the new term notwithstanding the failure of the lessees to literally live up to said requirements. (See *Fountain Co.* v. *Stein,* 97 Conn. 619 [118 Atl. 47, 27 A.L.R., p. 976 and note].)" (*Streicher* v. *Heimburge, supra,* at p. 681.) The statement quoted is dicta, and not entitled to precedential value. (*Simons* v. *Young, supra,* 93 Cal.App.3d at p. 188; *People* v. *Gregg* (1970) 5 Cal.App.3d 502, 506 [85 Cal.Rptr. 273].)

■ In a later and more direct statement, albeit also in dicta, the California Supreme Court stated that the time within which an option must be exercised cannot be extended beyond that provided in the contract. (*Holiday*

---

[1] The notice of intent to renew was late by three months in the instant case in contrast to the notice that was late by four days in *Fountain.* Also, unlike in *Fountain,* Prudential never sought a surrender of the leased property on expiry of the term.

[2] For a discussion of cases granting such equitable relief see Annotation (1984) 27 A.L.R.4th 277-278, section 4a.

[3] Bekins also states that even prior to the *Fountain* decision, the California Supreme Court in *Hall* v. *Center* (1870) 40 Cal. 63 "found an option contract to be an appropriate occasion for equitable relief." However, that case merely stands for the now accepted proposition that lack of "mutuality" does not make it inequitable to enforce a validly exercised option.

*Inns of America* v. *Knight* (1969) 70 Cal.2d 327, 330 [74 Cal.Rptr. 722, 450 P.2d 42].)

*Simons* v. *Young, supra,* 93 Cal.App.3d 170, followed the precept that a lessee must exercise his option within the time, in the manner and upon the terms stated in the lease. ■ "[W]hile a court may grant relief on traditional grounds for equitable intervention such as fraud, accident or mistake, it may not grant equitable relief to extend an option period beyond that agreed to by the parties when, as here, the failure to timely exercise the option is due entirely to the inadvertence or neglect of the optionee to which the optioner in no way contributed." (*Id.,* at p. 182.) Far from being an "aberrant opinion" as Bekins claims, *Simons* correctly reflects the law and policy of California regarding the granting of equitable relief upon lessee's failure to exercise its lease option.

■ Where, as here, "a rule of law is clearly established by a decision of the courts of California we are not at liberty to overrule it in favor of one followed in decisions of other states."[4] (*Estate of Perez* (1950) 98 Cal.App.2d 121, 123 [219 P.2d 35]; *Schneider* v. *Schneider* (1947) 82 Cal.App.2d 860, 862 [187 P.2d 459].)

### III

■ Bekins correctly states that pursuant to Civil Code section 3275,[5] California courts afford relief from forfeiture in appropriate cases. However, that policy has no application to the facts before us.

In order for there to be a "forfeiture" there must be some right or vested interest involved. ■ An option is merely an offer.

*Barkis* v. *Scott* (1949) 34 Cal.2d 116 [208 P.2d 367], and *Freedman* v. *The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], relied

---

[4]*American Houses* v. *Schneider* (3rd Cir. 1954) 211 F.2d 881 [44 A.L.R.2d 1352]; *Wharf Restaurant, Inc.* v. *Port of Seattle* (1979) 24 Wash.App. 601 [605 P.2d 334]; *J.N.A. Rlty. Corp.* v. *Cross Bay Chelsea, Inc.* (1977) 42 N.Y.2d 392 [397 N.Y.S.2d 958, 366 N.E.2d 1313]; *Geo. W. Millar & Co.* v. *Wolf Sales & Service Corp.* (1971) 65 Misc.2d 585 [318 N.Y.S.2d 24]; *Sosanie* v. *Pernetti Holding Corp.* (1971) 115 N.J.Super. 409 [279 A.2d 904]; *Deane* v. *Mitchell* (1950) 312 Ky. 389 [227 S.W.2d 893]; *Application of Topp* (1948) 81 N.Y.S.2d 344; *Galvin* v. *Simons* (1942) 128 Conn. 616 [25 A.2d 64]; *Xanthakey* v. *Hayes* (1928) 107 Conn. 459 [140 A. 808].

[5]Civil Code section 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

upon by Bekins for the proposition that California courts have afforded relief from forfeiture, are entirely distinguishable. Those cases do not deal with options but with contracts to purchase property.

Nor does *Title Insurance & Guaranty Co.* v. *Hart* (9th Cir. 1947) 160 F.2d 961, deal with failure to timely exercise an option to renew a lease. The court in *Title Insurance* specifically found the lessee to have exercised his option to renew the lease "well within the time [prescribed]" (at p. 966) and therefore held that minor breaches by a tenant who had made large investments in the property, should be overlooked. That ruling was followed in *Kaliterna* v. *Wright* (1949) 94 Cal.App.2d 926, 936 [212 P.2d 32], in which relief against forfeiture was afforded.

Bekins has failed to demonstrate entitlement to relief on any of the grounds asserted. No triable issue of material fact remains unresolved. The granting of summary judgment was entirely proper. (Code Civ. Proc., § 437c, subd. (c);[6] *Hepp* v. *Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 717 [150 Cal.Rptr. 408].)

The judgment is affirmed.

Arguelles, J., and Fields, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1986.

---

[6]Code of Civil Procedure section 437c, subdivision (c), provides in relevant part: "The motion [for summary judgment] shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Assigned by the Chairperson of the Judicial Council.