**WILBUR J. REINE, Plaintiff/Counter-Defendant**

v.

**MAGAUI AFO FIAME, SIIGAVAA FALEALI'I,
TINA ATOFAU, LOGOLEO FALEALI'I, the AFO FAMILY,
and SOUTH PACIFIC EQUIPMENT AND REPAIR,
Defendants/Counter-Claimants**

High Court of American Samoa
Land and Titles Division

LT No. 50-92

November 9, 1992

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge,
MATA'UTIA, Associate Judge.

Counsel:     For Plaintiff/Counter-Defendant Wilbur J. Reine,
             Gata E. Gurr

For Defendants/Counter-Claimants Fiame,
Siigavaa Faleali‘i, Tina Atofau, Logoleo Faleali‘i,
and the Afo Family, Charles V. Ala‘ilima
For Defendant/Counter-Claimant South Pacific
Equipment and Repair, Roy J.D. Hall, Jr.

This action was initiated on November 4, 1991, as CA No. 125-91 and first framed issues pertaining to rights and obligations under a sublease of land and improvements by Wilbur J. Reine ("Reine") to South Pacific Equipment and Repair ("SPEAR"). This action was followed by a second action, filed as CA No. 87-92 on September 2, 1992, in which Reine sought injunctive relief against the Afo family and individually named family members (collectively, the "Afo family") and SPEAR. This second action raised issues with respect to the lease of the same land and a dwelling of the Afo family to Reine, as well as the sublease.

On September 30, 1992, disposition of the Afo family's motion to dismiss under T.C.R.C.P. Rule 12, on the grounds of: (1) lack of jurisdiction and (2) failure to state a claim, was postponed until the trial on the merits, and Reine's application for a preliminary injunction was denied. CA No. 125-91 and CA No. 87-92 were also consolidated and transferred to the Land and Titles Division, pursuant to A.S.C.A. § 3.0208(b)(2), and later renumbered as LT No. 50-92. The Afo family then moved to refer these actions to the Secretary of Samoan Affairs for dispute-resolution proceedings under A.S.C.A. § 43.0302, which was denied on the grounds that the controversy did not involve any underlying title issues to communal land.[1] In addition, the trial of both actions was

---

[1] At the time of the hearing on September 30, 1992, the court relied significantly on *Tuilefano v. Beaver*, LT No. 31-78 (1978). In an order denying a motion to dissolve a temporary restraining order, *Tuilefano* dealt specifically with whether or not a controversy relating only to leasehold issues must be heard in the Land and Titles Division. The court, in holding that A.S.C.A. § 3.0208(b)(2) [5 A.S.C. § 402(d)(3) in 1978] required proceedings of all land controversies to be handled in the Land and Titles Division, even though title to communal land was not at issue, cited A.S.C.A. § 43.0302 [11 A.S.C. § 1002 in 1978] in further support of the conclusion that all land controversies belong within the jurisdiction of the Land and Titles Division. Since there was no referral to the Secretary of Samoan Affairs, *Tuilefano* at least inferentially stands

scheduled for October 15, 1992 (the date on which former CA No. 125-91 had been previously set for trial), and the time to file answers to the complaint in former CA No. 87-92 was shortened to require filing no later than October 6, 1992.[2]

The trial took place on October 15 and 16, 1992. After Reine completed the presentation of his evidence, SPEAR and the Afo family, pursuant to T.C.R.C.P. Rule 41(b), moved for dismissal of Reine's complaints on the ground that, upon the facts and the law, Reine had not shown any right to relief. However, as permitted by T.C.R.C.P. Rule 41(b), the court declined to render judgment until the close of all the evidence.[3] Having heard and considered all of the evidence, the court

---

for the proposition that leasehold controversies not involving communal-land title disputes need not go through dispute-resolution proceedings in front of the Secretary or his deputy before the Court can act substantively. The court did offer to reconsider that issue if any counsel cited any case that might require a different result. No citations have been forthcoming.

[2] On April 29, 1992, trial in former CA No. 125-91 was set for October 15, 1992. As of September 30, 1992, former CA No. 87-92 essentially added to the issues whether or not the underlying lease existed after April 18, 1992, and entitlement to injunctive relief resulting from the determination of the lease existence issue. The interrelationships between the two actions were significant. Further, it was apparent to the court that the parties were prepared, or could readily prepare, to proceed with the trial on October 15, 1992. Hearings on applications for preliminary injunctions take precedence over most other matters, as provided by A.S.C.A. § 43.1305(d), and denial of a preliminary injunction in this action was predicated in part on the early trial setting, which would enable a prompt decision on the merits of all issues and avoid the stamp of possible permanent effect of a preliminary injunction decision, particularly with respect to payment of SPEAR's sublease rental payments after April 18, 1992. Reine was in the courtroom on September 30, 1992, and his physical appearance indicated that early substantive resolution of this action was appropriate, so long as the other parties could fairly proceed with the trial.

[3] The standard of proof applicable to a motion to dismiss at the conclusion of a plaintiff's evidence in a civil action tried by the court is that a plaintiff must prevail by a preponderance of the evidence. The

has made the following findings of fact and conclusions of law, as required by T.C.R.C.P. Rule 52(a).

## FINDINGS OF FACT

The two leasehold agreements are at the foundation of this controversy.

On April 19, 1972, Tema Afo leased certain land in Faganeanea, American Samoa, and a dwelling on the land to Reine. The evidence clearly indicated that this land is the communal land of the Afo family; that Tema Afo was then the senior chief, or "sa'o," of the Afo family; and that he entered into the lease as the sa'o. The initial term of the lease was 20 years, beginning on April 19, 1972, and ending on April 18, 1992. Reine was given the option to renew or extend the lease for another ten years, upon written notice given at least 90 days before the end of the original term.

On June 28, 1989, Reine subleased the land and all improvements then existing on it to SPEAR. The initial term of the sublease was from August 1, 1989 to April 18, 1992. If Reine elected to extend the lease with the Afo family, SPEAR was given the option to renew the sublease for an additional ten years by so informing Reine at least 30 days prior to expiration of the original sublease term.

---

court is not concerned with whether or not a plaintiff has established a prima facie case, but rather it must weigh the evidence, resolve any conflicts in the evidence, and decide where the preponderance lies. *Willis v. Fai'ivae*, 10 A.S.R.2d 121, 141 (1989). It is noted that the proposed 1991 amendments to the Federal Rules of Civil Procedure moved this procedure from F.R.C.P. 41(b) to F.R.C.P. 52(c), restyling it as a judgment on partial findings. In this particular action, the documentary evidence presented by Reine was sufficiently voluminous and complex to preclude a hurried decision. Thus, the court chose to defer judgment until it had ample opportunity to review and reflect upon both the witnesses' testimony and documentary evidence.

## 1. *Underlying Lease Issues*

Factual findings are necessary on three issues in connection with the underlying lease. First, the continued existence of the underlying lease is at issue and depends on the effectiveness of Reine's notice to renew or extend the lease. Evidence was presented of extensive written and verbal communications between Reine and SPEAR and between Reine and his legal practitioner, beginning at least as early as August 8, 1990, on the importance of the renewal or extension to SPEAR, Reine's willingness to renew or extend the underlying lease, and the legal practitioner's assurances that the option to renew or extend would be exercised.

Despite these communications, the legal practitioner's letter of March 16, 1992, addressed to Tina Atofau and Logoleo Faleali'i at Matuu, American Samoa, was the first and only notice of the option's exercise in the record's evidence. The evidence, however, did not show actual transmittal of the legal practitioner's letter by mail, personal delivery, or other means, and the Afo family disclaimed receipt of it by the addressees or any other family member.

Since Tema Afo's death in 1983, the Afo family has been without a sa'o. Shortly after his death, the role of family leader in handling decisions requiring a family consensus was principally taken by defendants Magaui Afo Fiame and Siigavaa Faleali'i, who were elder lesser chiefs, or "matais," of the family. However, by the time of the legal practitioner's letter, Magaui had become the main leader, as Siigavaa's age and health reduced her capacity to participate in these matters. Reine's rental payment checks were regularly drawn payable to Magaui and Siigavaa at least as far back as July 9, 1987. At the time when the lease required the exercise of the renewal or extension option, Reine was well aware of their function in Afo-family matters and that his renewal or extension notice could have been given to them. In any event, the notice was not given until well after the 90-day limitation.

The second issue revolves around Reine's use of the premises, in light of the lease provision which states that the primary use of the leased premises will be for "storage and sale of construction material and related purposes and supplies." Basically, SPEAR, which also had a NAPA automotive parts and equipment distributorship, has operated a business of storing, selling and repairing equipment and parts. Further, the sublease authorized additional subleasing, which was done by SPEAR

29

to two sub-sublessees, one for automotive repair activities and the other for machine-shop facilities.

Third, the amount of rent actually paid by Reine has been put at issue. Reine claimed that the rent had been fully paid through November, 1992, and for that reason, he stopped making further rental payments after July, 1991. However, his evidence, other than canceled checks issued between July 9, 1987, and December 3, 1989, amounted to an abstract reconstruction of payments based on the lease requirements rather than records of actual payments. The Afo family, on the other hand, has contended that Reine is behind in the rental payments. However, their evidence has also fallen short of concrete proof of any amount owed. Thus, we are unable to find, from the record's evidence, either an overage or underage in the rental payments by Reine to the Afo family.

2. *Sublease Issues*

The sublease also brings to the foreground three issues requiring factual determinations. First, entitlement to the sublease's rental payments after April 18, 1992, has been questioned. The Afo family's attorney, by letter dated March 23, 1992, informed SPEAR that when the underlying lease expired in April 1992, the family was willing to offer a month-to-month tenancy to SPEAR, at the same rental rate paid by SPEAR to Reine under the sublease, for the portion of the premises in actual use by SPEAR. The letter also indicated that similar tenancies would be offered to SPEAR's two sub-sublessees. Since April 18, 1992, SPEAR has paid the rent at this rate directly to the Afo family.

Second, Reine has contested the accuracy of the rental payments by SPEAR to Reine under the sublease. The make-up of the sublease rental has involved three elements: (1) $2,000 per month, (2) 50% of revenue earned from third-party use of the premises, and (3) 2.5% of SPEAR's sales volume in excess of $1 million a year (calculated monthly on a cumulative carry-forward basis and paid 30 days in arrears). The sublease also authorized SPEAR to enter the premises as of June 28, 1989, and make necessary repairs and renovations to bring the premises to "merchantable" condition and to credit these costs up to $10,000 against the rent, prorated over 24 months. The sublease did not contain any other provision on the duty to repair or renovate. There was, however, evidence that Reine later made oral commitments to SPEAR to extend the repair credit to the full amount of the initial repairs and renovations in the total sum of $17,190.81, as well as to allow credits for

30

the cost to SPEAR of repairs it made for damage caused by two hurricanes. The evidence showed that during the period from August 1, 1989, to April 18, 1992, SPEAR accurately accounted for the three elements of the sublease rental, including a 2.5% sales-volume override rental for 1991, the only calendar year in which sales exceeded $1 million, and the $10,000 repair credit. Although the repair credit was not taken strictly by the terms of the sublease, SPEAR made actual payments in accordance with this accounting. It also took additional credits for the cost of repairs which it made as a result of damage to the premises caused by Hurricane Val in 1991, in the sum of $948.36, unused pre-paid rent advanced at Reine's request in the net sum of $516.28, and miscellaneous unpaid services provided by SPEAR to Reine in the sum of $255.61.

Third, SPEAR has sought damages against Reine for alleged lost profits, lost capital investment, relocation expenses if required to move, and other consequential and foreseeable damages. While SPEAR introduced evidence indicating that it may have suffered certain losses, including in particular the consequences of any breach of Reine's purported promises to renew or extend the underlying lease, this evidence has failed to provide a sufficient basis for enumerating the dollar amount of any such damages, other than (1) $5,108.41 expended by SPEAR on repairs for property damage to the premises caused by Hurricane Ofa in 1990 and (2) lost sub-sublessee income after April 18, 1992.

## CONCLUSIONS OF LAW

1. Reine could have exercised his option to renew or extend the underlying lease with the Afo family by delivering his written notice for this purpose to defendants Magaui Afo Fiame, Siigavaa Faleali'i, or another authorized representative of the family, including the family's attorney, no later than 90 days before April 18, 1992. Reine failed to exercise his option to renew or extend the lease in a timely manner, and his effort to exercise the option on March 16, 1992, even assuming his legal practitioner's letter of that date was delivered to an appropriate person, was ineffective. *See Bekins Moving & Storage v. Prudential Ins. Co.*, 176 Cal. App. 3d 245, 221 Cal. Rptr. 738 (1985). As a tenancy for a fixed term, the lease expired, without any notice or other act, at the end of the term on April 18, 1992. *See* 49 Am. Jur. 2d *Landlord and Tenant* § 69 (1970). Since the Afo family clearly evidenced its intent to terminate the underlying lease, Reine did not hold over as a consensual tenant at sufferance, tenant at will, or periodic tenant. *See The City v. Hart*, 175 Cal. App. 3d 92, 220 Cal. Rptr. 349 (1985).

31

2. The expressly authorized use of the premises under the underlying lease, for the "storage and sale of construction material and related purposes and supplies," is modified by the word "primary." Arguably, the express use is sufficiently broad to encompass the activities of SPEAR and its sub-sublessees. However, the word "primary" clearly permits other uses of the premises, and the activities since the sublease commenced in 1989 have not, in any event, been incompatible with the primary use contemplated in the underlying lease. Moreover, all three current users appear to be acceptable to the Afo family by its express grants of month-to-month tenancies to the present occupants. No breach of the terms of the underlying lease resulted from the sublease and sub-sublease uses of the premises.

3. Since we have not found from the evidence any convincing basis to determine whether Reine's rent under the underlying lease was overpaid, underpaid, or exactly paid as of April 18, 1992, we do not reach any conclusion with respect to rental amounts which may be owed by Reine to the Afo family or by the Afo family to Reine.

4. Since the underlying lease expired on April 18, 1992, SPEAR has properly paid rent accruing after that date to the Afo family, under the month-to-month tenancy it now has with the family. The Afo family is entitled to those rental payments.

5. SPEAR has correctly accounted for the rental calculations under the terms of the sublease with Reine. The credits taken outside of the terms of the sublease for unused pre-paid rent and unpaid services in making actual rental payments were properly included. However, credit should not have been taken for SPEAR's repairs of Hurricane Val damage. Except by statute or agreement, a commercial lessor is not obligated to repair or renovate leased premises. 49 Am. Jur. 2d *Landlord and Tenant* § 774. While a contemporaneous oral agreement may establish a lessor's duty to repair, a subsequent oral undertaking cannot vary a written lease complete in itself. 49 Am. Jur. 2d *Landlord and Tenant* § 829. In this sublease, the inclusion of the limited repair credit shows that the parties did not intend to hold Reine generally responsible for repairs. Even if the sublease is read to permit oral amendments, we did not find sufficient evidence of genuine agreement by Reine to any such agreements of his intent to waive the limited repair-credit clause. Thus, SPEAR has an additional rental obligation to Reine in the sum of $948.36.

6. Damages cannot be awarded in the absence of evidence of some reasonable basis on the monetary amount of those damages which can be determined. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 266 (1946). In addition, as indicated above, SPEAR is not entitled to recover amounts it expended on repairs or renovations to the premises following Hurricane Ofa. Likewise, Reine's oral representations to SPEAR that he would exercise the option to renew or extend the underlying lease were not sufficient to amend the sublease or to create a separate agreement and are unenforceable. Reine was not legally obligated to exercise the option. Thus, SPEAR is also not entitled to recover damages for lost sub-sublease rental income after April 18, 1992.

7. Reine recovers $948.36 on his complaint for rent against SPEAR. In all other respects, his complaints against SPEAR are dismissed. Reine's complaint against the Afo family is dismissed. The counterclaims by the Afo family and SPEAR against Reine are also dismissed.

It is so ordered.