Filed 11/19/20  Moreno v. Munoz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

PABLO MORENO,

　　Plaintiff and Respondent,

v.

OSCAR MUNOZ,

　　Defendant and Appellant.

E074132

(Super.Ct.No. RIC1606268)

OPINION

　　APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger* and Chad W. Firetag, Judges.  Affirmed.

　　Law Office of Luis E. Lopez and Luis E. Lopez, for Defendant and Appellant.

　　Weisberg Law Group and Devin Weisberg, for Plaintiff and Respondent.

　　*  Retired Judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

# I.

## INTRODUCTION

Plaintiff and respondent, Pablo Moreno sued defendant and appellant, Oscar Munoz over their respective interests in a residential property. Moreno and Munoz reached a settlement during a settlement conference with the trial court. Along with their attorneys, they orally put the settlement on the record. Months later, after a dispute arose over whether Munoz timely paid Moreno as agreed, Munoz moved to enforce the settlement. The trial court granted the motion and entered judgment "pursuant to the settlement the parties reached" at the settlement conference and orally put on the record. Munoz later moved to the vacate the judgment on the ground that it did not accurately reflect the parties' settlement. Munoz also asked the trial court to enter judgment with new dates for the parties to perform their obligations under their settlement agreement. The trial court denied the motion.

Munoz appeals. We affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Moreno brought this quiet title action to resolve his dispute with Munoz over their ownership interests in a residential property. Moreno alleged that he owned the property and Munoz's name was fraudulently added to the property's title. According to Moreno, Munoz unlawfully moved into the property and collected rent from the tenants, even though he owns no interest in the property.

On January 22, 2019, the parties reached a settlement agreement during a settlement conference with the trial court. They orally put the terms of the settlement on the record. Munoz's attorney, Floyd Fishell, explained some of the terms as follows: "[Munoz] will obtain $10,000 and send that in a money order or something along those lines to [Moreno's] counsel on or before January the 30th[, 2019], which would be an advance on a total settlement in the amount of $97,000. The other $87,000 will be paid within 60 days after January 30th, 2019."

Mr. Fishell also stated that the parties agreed that if Munoz failed to obtain a loan "for either the property or to pay the $87,000 or both within the 60-day time frame, that the $10,000 will be forfeited to [Moreno]." Mr. Fishell continued: "[t]he property will then be immediately listed for sale by [Moreno's] attorney. And there's a current offer on the table, if that's on the table . . . we will be immediately agreeable to it and we'll accept any other thereafter that [Moreno] will automatically get a minimum of $92,000 minimum from any sale."

After Mr. Fishell explained additional terms, the trial court asked Moreno's counsel, Devin Weisberg, if he wanted to add anything. Mr. Weisberg responded, "Yes. And in the event that the $10,000 is not received from Mr. Munoz by the 30th, that the property will then be listed by [Moreno] and then that it will be sold at fair market value." The trial court asked if Munoz would not object to the sale. Mr. Fishell confirmed that he would not.

The trial court asked the parties if they understood and agreed to the terms. Moreno said that he did. Munoz said, "I want to be clear about the 10,000. I just wanted to clear up [*sic*]. So it's 10,000 for payment to be done by the 30th of when?" Mr. Fishell confirmed that Munoz's $10,000 payment was due to Moreno by January 30, 2019.

Around 6:30 p.m. on January 29, 2019, Munoz's counsel, Robert Chandler, emailed Mr. Weisberg. Mr. Chandler stated that he had "[j]ust receive[d] the $10,000 down payment from [Munoz]. I'll deposit the check to our trust account and remit a payment to your trust account as soon as the check clears." Munoz's check was made out to Mr. Chandler's law firm. Mr. Chandler emailed Mr. Weisberg around 8:00 a.m. the following morning, January 30, stating that Munoz's check "will be deposited to our law firm's trust account this morning."

Mr. Weisberg immediately replied, "The stipulation was that payment would be made directly to my office within 7 days. While I appreciate the effort, I don't think this is compliant. I'm going to assume that the check, once deposited, will be subject to a five day hold by the bank. There definitely won't be compliance by the time the funds are released and you send me payment."

Mr. Chandler responded, "Well, there is generally a 3-day hold and I will overnight our trust account check to you Tuesday, February 5. I think this is reasonable compliance. If you want, since [Munoz] is coming in today, I will have [him] issue a

4

check made payable either directly to your trust account or to [Moreno] and overnight it to you for receipt tomorrow Thursday, January 31, 2019."

The following day, January 31, 2019, Mr. Weisberg replied to Mr. Chandler's email. Mr. Weisberg said, "I don't yet know what [Moreno's] position is regarding the late $10,000 payment." "[T]he failure to pay the $10,000 within 7 days permits [Moreno] to list [the property] for sale forthwith. . . . [Moreno] may opt to sell it to the current cash buyer."

Five days later, Mr. Chandler emailed Mr. Weisberg. He explained that he was "ready to remit our law firm's trust account check based upon [Munoz's] previous deposit to us on 01/30/19." Mr. Chandler asked Mr. Weisberg if Moreno "will be proceeding with the settlement agreement or otherwise." Mr. Weisberg confirmed that Moreno was "not interested in the $10,000" and planned to proceed "with the terms of the settlement agreement."

Munoz moved to enforce the settlement under Code of Civil Procedure section 664.6 (section 664.6) and to enter judgment according to his understanding of the settlement's terms. Munoz argued that his sending Mr. Chandler a $10,000 check on January 29, 2019, though payable to Mr. Chandler's firm, satisfied his agreement to pay Moreno $10,000 by January 30, 2019. Munoz thus argued that Moreno improperly refused to accept the $10,000 payment and failed to honor the settlement agreement. Munoz asked the trial court to enter judgment with new deadlines for the parties' performance.

Moreno opposed the motion. He claimed the parties agreed that Munoz would pay Moreno $10,000 by January 30, 2019, Munoz did not do so, and thus Moreno was entitled to sell the property as of January 31, 2019.

The trial court granted Munoz's motion to enforce the settlement, but not on the terms he wanted. The trial court found that the "judgment should reflect the terms and the dates" the parties agreed to during the settlement conference. The trial court therefore denied Munoz's request to enter judgment with new dates for the parties' performance. It further found that (1) the parties agreed that Munoz would pay Moreno $10,000 by January 30, 2019; (2) Munoz did not do so; and (3) Moreno was therefore entitled to sell the property at fair market value. The trial court then entered judgment reflecting the parties' agreement, as construed by the trial court, including that Moreno was entitled to sell the property if Munoz did not "deliver payment of $10,000 to [Moreno's] attorney by January 30, 2019" and that Moreno "shall be entitled to a minimum of $92,000 of any sales proceeds."

Munoz moved to vacate the judgment, which the trial court denied. Munoz timely appealed.

III.

DISCUSSION

On appeal, Munoz argues (1) the trial court's judgment does not accurately reflect the agreement the parties reached; (2) he substantially performed the contract by sending $10,000 to his counsel on January 29, 2019; and (3) he should be allowed to make the

6

$10,000 payment because Moreno prevented him from doing so by January 30, 2019.

A. *Applicable Law and Standard of Review*

"The power of the trial court under . . . section 664.6 . . . is extremely limited." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176.) "[T]he trial court is under a duty to render a judgment that is in exact conformity with an agreement or stipulation of the parties. 'If interpretation of a stipulation is in order the rules applied are those applied to the interpretation of contracts. [Citations.] It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties.'" (*Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, 840.) The trial court's factual findings on a motion to enforce a settlement under section 664.6 are subject to limited appellate review and will be upheld if supported by substantial evidence. (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162.)

B. *The Judgment Accurately Reflects the Parties' Settlement*

Paragraph (e) of the judgment provides in part that if Munoz paid Moreno $10,000 by January 30, 2019, but failed to obtain proper financing[1] within 60 days, then Moreno could list the property for sale. It also provides that Munoz "will accept any current buyer's offer existing at the time and will accept any buyer's offer thereafter." Paragraph (f) of the judgment provides in full: "[Moreno] shall be entitled to a minimum of

---

[1] The financing would have to allow Munoz "to assume the mortgage(s) on the property and remove [Moreno's] name from all mortgage loans." Moreno would then "execute a quitclaim deed transferring his interest in the property to [Munoz]."

7

$92,000 of any sales proceeds."

Munoz contends these terms do not accurately reflect the parties' oral settlement. In his view, "the $92,000 minimum term is a limitation on the conditions under which" he must approve the sale of the property. He also suggests that the $92,000 minimum term would be an "impossibility" and would deprive him of his ownership interests if the sale proceeds are less than $92,000.

Putting aside the fact that Munoz's concerns are speculative because there is nothing in the record to support them, paragraphs (e) and (f) are consistent with the parties' oral settlement. Munoz's counsel explained that the parties agreed that Munoz would pay $10,000 to Moreno by January 30 and then obtain proper financing within 60 days. Counsel then stated that, if Munoz failed to do so, Moreno could list the property for sale. Most relevant here, Munoz's counsel told the trial court that there was a "current offer on the table" that Munoz would accept, and that "we'll accept *any offer* thereafter that [*sic*] [Moreno] will automatically get *a minimum of $92,000 minimum* [*sic*] *from any sale.*" (Italics added.)

In other words, Munoz's counsel told the trial court that the parties agreed that Munoz would accept "any offer" and that Moreno was entitled to a minimum of $92,000 from "any sale." Paragraphs (e) and (f) of the judgment correctly reflect these terms. The trial court's judgment therefore accurately reflects the parties' settlement.

C. *Munoz Cannot "Substantially Perform" an Option Contract*

The parties agreed that if Munoz paid Moreno $10,000 by January 30, 2019, then Munoz had 60 days to procure proper financing for the property. But the parties also agreed that if Munoz did not pay Moreno $10,000 by January 30, 2019, then Moreno could list and sell the property immediately. Moreno thus implicitly agreed not to list or sell the property until January 31, at the earliest, and only if Munoz failed to pay him $10,000 by January 30. This agreement was therefore an option. (See *Palo Alto Town & Country Village, Inc. v. BBTC Co.* (1974) 11 Cal.3d 494, 499 ["'[A]n irrevocable option is a contract made for consideration, to keep an offer open for a prescribed period.' [Citations.]," italics omitted]; *Bekins Moving & Storage Co. v. Prudential Ins. Co.* (1985) 176 Cal.App.3d 245, 250 [an option is "'''an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option'''"].)

Munoz does not dispute that he failed to pay Moreno $10,000 by January 30. He argues, however, that he substantially performed his end of the bargain because he sent Mr. Chandler a $10,000 check, payable to Mr. Chandler's law firm, on January 29.

"An option is a contract establishing an irrevocable offer. As with other offers, the offeror may prescribe the mode of acceptance." (*Jenkins v. Tuneup Masters* (1987) 190 Cal.App.3d 1, 7.) "[W]hen the provisions of an option contract prescribe the particular manner in which the option is to be exercised, they must be strictly followed." (*Palo Alto Town & Country Village, Inc. v. BBTC Co.*, *supra*, 11 Cal.3d at p. 498.) For that reason,

the contract principle of substantial performance does not apply to the required terms of acceptance of an option. (See *Bekins Moving & Storage Co. v. Prudential Ins. Co.*, *supra*, 176 Cal.App.3d at p. 251; *Jenkins v. Tuneup Masters*, *supra*, at p. 7; *Palo Alto Town & Country Village, Inc. v. BBTC Co.*, *supra*, at p. 498.)

Thus, whether Munoz "substantially performed" by sending his counsel a check on January 29, 2019 does not matter. Because Munoz did not timely or strictly follow Moreno's terms of acceptance of the option, it "expire[d] by its own terms." (*Bekins Moving & Storage Co. v. Prudential Ins. Co.*, *supra*, at p. 251.) As a result, the option expired, and Moreno was free to sell the property as of January 31, 2019.

D. *The Trial Court Could Not Change the Settlement Agreement's Terms*

Munoz asked Mr. Weisberg on January 30, 2019, whether he could overnight a check made payable Mr. Weisberg's client trust account, but Mr. Weisberg did not respond until February 5, 2019. Munoz argues that the trial court should have altered the terms of the parties' settlement agreement to allow Munoz additional time to make the $10,000 payment because Mr. Weisberg prevented him from timely doing so.

We disagree for two reasons. First, Mr. Weisberg did not prevent Munoz from timely performing. As outlined above, the parties agreed that Munoz would send the $10,000 payment "in a money order or something along those lines to [Moreno's] counsel on or before January the 30th." Munoz did not do so; he only sent a check to Mr. Chandler made payable to his law firm. Although Mr. Chandler offered to overnight a check to Mr. Weisberg on January 30, the payment still would have been untimely

10

because it would not have been received until January 31. On top of this, Mr. Chandler recognized that any check would have been subject to a days-long hold, so any check sent on January 30 or 31 would not have cleared until February 2019. Thus, Mr. Weisberg did nothing more than correctly tell Mr. Chandler that Munoz did not timely comply with their agreement.

Second, Munoz does not cite, and we cannot locate, any authority that suggests the trial court could have altered the parties' settlement agreement because of Moreno's allegedly preventing Munoz from exercising the option. "The power of the trial court under . . . section 664.6 . . . is extremely limited." (*Hernandez v. Board of Education*, *supra*, 126 Cal.App.4th at p. 1176.) "[T]he trial court is under a duty to render a judgment that is in *exact conformity* with an agreement or stipulation of the parties." (*Jones v. World Life Research Institute*, *supra*, 60 Cal.App.3d at p. 840, italics added.) "[N]othing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810.) The trial court therefore had no power to alter the terms of the parties' settlement agreement to allow Munoz additional time to make the $10,000 payment.

11

IV.

DISPOSITION

The judgment is affirmed.  Moreno shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

12