Filed 9/17/21  Johnson v. Dunn Investment Properties CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHARLES JOHNSON et al., | B305459 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV17262) |
| v. | |
| DUNN INVESTMENT PROPERTIES, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Trutanich & Associates, Dominic J. Trutanich, for Plaintiffs and Appellants.

JBV Law & Associates, Adam Apollo, for Defendant and Respondent.

Plaintiffs and appellants Charles Johnson and Sheila Johnson (the Johnsons) leased commercial real property from defendant and respondent Dunn Investment Properties, Inc. (Dunn Investment) for a specified term.  The lease provided it would expire in July 2016 unless the Johnsons exercised an option to extend the lease in writing.  The Johnsons admit they did not invoke the option in writing, but they argue they effectively exercised the option to extend through their conduct.  Years later, when Dunn Investment offered the Johnsons a new term lease or, failing acceptance of that, a significantly higher month-to-month rent, the Johnsons sued Dunn Investment alleging breach of the lease.  The trial court sustained Dunn Investment's demurrer to the complaint without leave to amend.  We primarily consider whether the Johnsons effectively exercised their option to renew the lease.  We also decide whether the Johnsons can state a claim for breach of the lease based on alleged failures to repair or replace the property's roof and HVAC system.

## I.  BACKGROUND

A.    *The Facts as Alleged in the Complaint and Shown by the Attached Lease Agreement*

1.    *The lease*

On January 20, 2011, the Johnsons signed a lease to rent property located at 24773 Avenue Rockefeller in Valencia, California (the property) from Dunn Investment.  The lease term ran from March 1, 2011, to July 31, 2016 (the "Expiration Date").

The lease specified a base rent of $7,411 for the first month and charged a security deposit but no other fees.  A form rent adjustment addendum specified the rent to be paid over specified

periods from April 2012 through July 2016. According to the addendum, the rent owed from April 2015 to February 2016 was $8,744. The rent owed from March 2016 to July 2016 was $9,634.

The lease included various terms addressing the parties' respective responsibilities for upkeep of the property and its various components. For example, the lease specified Dunn Investment warranted existing elements on the property, including the HVAC system, were in good condition on the date the lease commenced. It also stated that if one of the systems were to fail during the warranty period, Dunn Investment would rectify the failure at its expense once it received written notice from the Johnsons. The warranty period for the HVAC system was 12 months.

The Johnsons were responsible for keeping the property, facilities, and equipment (e.g., the HVAC equipment) in good condition and repair. The Johnsons were to procure and maintain service contracts to retain contractors specialized and experienced in, among other things, HVAC equipment. Dunn Investment also reserved the right to procure and maintain such service contracts upon notice to the Johnsons, and to demand reimbursement for the cost of doing so. If certain items, including the HVAC system, could not be repaired for less than 50% of the cost of replacing the item, Dunn Investment was required to replace it. The Johnsons would then be required to pay 1/144th of the cost each month.

Dunn Investment bore full responsibility for the repair of the surface and structural elements of the roof, foundation, and bearing walls if the Johnsons provided written notice that such repair was necessary. Dunn Investment did not have any other obligation to repair or maintain the property. The parties agreed

3

that notwithstanding negligence or breach of the lease by Dunn Investment, it would not be liable under any circumstances for, among other things, injury or damage to the Johnsons' goods, wares, merchandise, or other property, whether such damage was caused by water, the HVAC system, or lighting fixtures. The lease states the Johnsons' sole recourse in the event of such damage would be to file a claim on the insurance policy or policies the lease required them to maintain. In an addendum to the lease, the Johnsons further acknowledged Dunn Investment was not the insurer of their property and any damage to their property from roof leaks would be their responsibility.

Dunn Investment was not to be deemed in breach of the lease unless it failed to perform an obligation it was required to perform within a reasonable time, defined to be a minimum of 30 days after written notice.

An addendum to the lease also included a form option to extend, which gave the Johnsons with an option to extend the lease for one additional 60-month term. The form provided that to exercise the option to extend, the Johnsons were required to give written notice to Dunn Investment a specified number of months prior to the date on which the option period would commence. The form also addressed the rent that would be charged if the option were exercised. It specified the base rent would be adjusted to the market rental value of the property on August 1, 2016. The market rental value was to be set either by agreement between the parties or, if they could not agree, via other specified procedures. The addendum also provided a fixed rental adjustment schedule, which provided the base rent would increase by 3% of the prior base rent every year from August 1, 2017, through August 1, 2020.

## 2. Events during the lease term

The Johnsons' primary business contact at Dunn Investment was its president, James Dunn (Dunn). They also had dealings with Caesar Guandique (Guandique), who was assisting Dunn. Both Dunn and Guandique told the Johnsons they were great tenants and could stay as long as they liked several times. Dunn and Guandique also expressed a preference for keeping the relationship between the Johnsons and themselves informal.

In December 2014, the property's roof leaked, damaging the Johnsons' property and equipment. Dunn apologized for the damage, said he would have someone patch the roof, and promised to later replace it.

Dunn died in September 2015. His estate entered probate, and the Johnsons were informed ownership of the property was subject to those probate proceedings.

## 3. Events after July 1, 2016

Following Dunn's death, the Johnsons continued paying rent on the property. Their checks were accepted and deposited. The Johnsons continued to keep different aspects of the property operational, including by repairing water lines, rebuilding swamp coolers, and replacing ballasts in lightbulbs.

The Johnsons never exercised their option to renew the lease in writing. Guandique did not object to the Johnsons remaining in possession of the property or state the lease had not effectively been renewed; he continued to tell them they were great tenants.

In August and September 2016, the Johnsons met with Guandique to review the monthly rent. The Johnsons realized the rent had increased 5-6% every year during the five-year lease term, except for the period from March 2016 to July 2016. The Rent Adjustment addendum to the lease called for the rent to increase more than 10% during that period. After meeting with the Johnsons, Guandique agreed Dunn had intended all rent increases to be in the 5-6% range, and decreased the rent for March through July 2016 to $9,188. Guandique later sent the Johnsons a spreadsheet outlining the rent due through October 2016, which specified they were to pay $9,188 each month.

In December 2018, the Johnsons received a letter from illi Commercial Real Estate (ICRE). The letter represented new co-trustees had been appointed the trustees of Dunn Management Services and the new trustees had contracted with ICRE to operate Dunn Management Services.

As of July 2018, the Johnsons' rent was $9,747.55. At the end of February 2019, ICRE informed the Johnsons they could either pay $14,080 per month for a month-to-month lease or pay $12,600 if they agreed to a three-year lease. ICRE also informed the Johnsons they would be required to pay $5,040 in community area maintenance charges.

Counsel for the Johnsons wrote to ICRE but received no response. ICRE continued to invoice the Johnsons an amount in excess of $9,747.55 and continued to bill them for community maintenance.

The Johnsons "on several occasions alerted [Dunn Investment] by way of [ICRE] and its predecessors" that the roof

at the premises leaked and damaged their property.[1]  The leaking roof damaged the Johnsons' equipment and property in an amount exceeding $250,000.  The Johnsons also "on several occasions alerted [Dunn Investment] by way of [ICRE] and its predecessors" that the HVAC system did not work, leaving the property cold in the winter and hot in the summer.  Dunn Investment removed the existing commercial HVAC system and replaced it with a residential system that is not equipped to handle a 15,000 square foot building.  The Johnsons complained to Dunn Investment, but Dunn Investment had not remedied the problem.

### B.     This Lawsuit
#### 1.     The complaint

The Johnsons filed their complaint on May 17, 2019.  The complaint alleges four causes of action: breach of contract, breach of the covenant of good faith and fair dealing, injunctive relief, and declaratory relief.

The Johnsons' breach of contract cause of action alleges the Johnsons and Dunn Investment entered into a written contract and the Johnsons performed all conditions of the lease or were reasonably excused from doing so.  The breach of contract claim further alleges Dunn Investment breached the lease by attempting to terminate it, by attempting to unilaterally modify the lease terms, by imposing an unconscionable rent and demanding payment of community maintenance fees, and by

---

[1]      While the complaint alleges Charles Johnson called James Dunn in December 2014 to inform him the roof had "leaked badly," it does not specify whether there were any other instances of damage.

7

failing to repair the property's roof and replace the HVAC system with one suited for a commercial or industrial setting in a 15,000 square foot building. The Johnsons alleged they suffered financial damages in an amount exceeding $250,000, as well as compensatory and consequential damages. The complaint attached the lease as an exhibit.

The cause of action for breach of the covenant of good faith and fair dealing alleges Dunn Investment was unfairly interfering with the Johnsons' right to receive the benefits of the lease. The injunctive relief cause of action seeks to enjoin Dunn Investment from refusing to abide by the renewal of the lease, from imposing a rent that exceeded that found in the option to renew, from imposing a common area maintenance fee, and from refusing to fulfill its obligations under the lease, such as replacing the HVAC system and installing a new roof.

The Johnsons' declaratory relief cause of action asserts there is a present controversy between the parties regarding whether the Johnsons validly renewed the lease, the rental rate to be paid by the Johnsons, whether community maintenance charges are allowed, and Dunn Investment's obligations to maintain and repair the property.

The Johnsons prayed for damages in an amount to be proven at trial, but exceeding $250,000; compensatory and consequential damages according to proof; additional damages; interest on their losses; a temporary restraining order and preliminary injunction; attorneys' fees; costs of suit; and such further relief as the court might deem proper.

## 2. *The demurrer*

Dunn Investment demurred to the complaint. As to the cause of action for breach of contract, Dunn Investment argued the terms of the lease attached as an exhibit contradicted the allegations of the complaint and the terms of the lease should control. Dunn Investment also argued the Johnsons had not exercised the option to extend the lease because it required the option be exercised in writing and the Johnsons had not alleged they complied with the requirement. Dunn Investment further argued the lease permitted it to assess charges for expenses beyond base rent, such as common area maintenance fees. As to the alleged failure to provide an adequate HVAC system or repair the roof, Dunn Investment argued the Johnsons did not allege they followed the procedure prescribed by the lease before there could be a breach, i.e., that they gave written notice of the problem and provided an opportunity to cure it.

Dunn Investment argued the causes of action for breach of the covenant of good faith and fair dealing and injunctive relief failed because the Johnsons did not sufficiently allege a breach of the agreement and because injunctive relief is not a cause of action. Dunn Investment also argued the declaratory relief cause of action failed because the complaint did not identify any disputes that were not answered by provisions of the contract. Specifically, the company argued that absent an allegation the Johnsons had exercised their option to renew the lease in writing, the rental rate, including the addition of common area maintenance fees, was at the landlord's discretion. It also argued the lease agreement attached to the complaint answered the Johnsons' questions about Dunn Investment's obligations under the lease.

9

### 3. *The hearing on the demurrer*

The trial court held a hearing on the demurrer. The record does not contain a reporter's transcript of this hearing. The substance of the minute order states, in full, as follows:

"**NATURE OF PROCEEDINGS**: Case Management Conference; Hearing on Demurrer — without Motion to Strike [¶] The matters are called for hearing and argued. [¶] After conferring with counsel, the Court rules as follows: [¶] The Demurrer – without Motion to Strike filed by [Dunn Investment] on 10/25/2019 is Sustained without Leave to Amend. The demurrer is sustained without leave to amend as to the First Cause of Action for Breach of Contract, Second Cause of Action for Implied Covenant, Third Cause of Action for Injunctive Relief and Fourth Cause of Action for Declaratory Relief. There is no contract. [¶] The Court orders the Complaint filed by [the Johnsons] on 5/17/2019 dismissed with prejudice. [¶] Counsel for defendant is to give notice. [¶] Certificate of Mailing is attached."[2] The court also entered an order of dismissal dismissing the entire action with prejudice.

## II. DISCUSSION

The Johnsons admit in their complaint that they did not exercise their option to extend the lease in writing. Though they argue their conduct was sufficient to renew the lease, the express terms of the lease and the facts otherwise alleged in the complaint do not support their contention. The lease accordingly

---

[2]     Our review is hindered by the lack of a developed record as to the trial court's reasoning, but we will proceed to the merits because the record is minimally adequate.

10

expired at the end of its initial five-year term and the Johnsons became month-to-month tenants when Dunn Investment accepted their subsequent rent payments.  Because the Johnsons did not renew their lease, their breach of contract claim fails to the extent it is based on Dunn Investment's alleged attempts to terminate the lease, increase the rent, or charge additional fees.  The remainder of their breach of contract claim fails because a reading of the terms of the lease demonstrates the wrongs of which they complain either do not constitute a breach of the lease or are not compensable under the lease.  The Johnsons' request for declaratory relief, derivative of their contract breach theories, fails for the same reasons.  Additionally, we conclude the trial court did not abuse its discretion in sustaining the demurrer without leave to amend because the Johnsons have not presented facts demonstrating they can state a claim for relief.

### A.     *Standard of Review*

We review an order sustaining a demurrer de novo. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)  "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law."  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, (*Yvanova*).)  We also consider exhibits incorporated into a complaint.  (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.)  "If facts appearing in the exhibits contradict those alleged [in the complaint], the facts in the exhibits take precedence."  (*Ibid.*; see also *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 ["facts appearing in exhibits attached to the complaint will also be

11

accepted as true and, if contrary to the allegations in the pleading, will be given precedence"].)  "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the [trial] court acted on that ground."  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504, fn. 2 [validity of the trial court's action, not the reason for its action, is what is reviewable].)

"To determine whether the trial court should, in sustaining the demurrer, have granted plaintiff leave to amend, we consider whether on the pleaded and noticeable facts there is a reasonable possibility of an amendment that would cure the complaint's legal defect or defects. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [ ] (*Schifando*).)" (*Yvanova, supra*, 62 Cal.4th at 924.)  If we see such a reasonable possibility "then we conclude that the trial court abused its discretion in denying leave to amend.  If we determine otherwise, then we conclude it did not." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)  "The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

### B.    Breach of Contract Cause of Action[3]

The Johnsons' breach of contract cause of action asserts Dunn Investment breached the lease in four ways:  (1) by

---

[3]    Dunn Investment contends the Johnsons' arguments should be disregarded because they failed to timely file an opposition to the demurrer below.  The record reflects the Johnsons had not filed an opposition to the demurrer as of two

attempting to terminate the lease; (2) by attempting to unilaterally modify the lease terms, impose an unconscionable rent, and demand payment of community maintenance fees; (3) by failing to repair the roof; and (4) by failing to replace the HVAC system with one suited for a commercial or industrial setting. The first two contentions fail because, as we shall explain, the Johnsons did not exercise their option to renew the lease. To the extent the latter two theories are viable despite the expiration of the lease, they each fail because other provisions of the lease demonstrate the Johnsons have not stated a claim.

### 1. *The Johnsons did not exercise their option*

When a lease specifically identifies how a lessee is to exercise an option to renew the lease term, the lessee must

---

days before the originally noticed demurrer hearing date, when they filed a notice of substitution of attorney pursuant to which they substituted in new counsel. The trial court held a hearing, for which there is no reporter's transcript in the record. A minute order reflects the court continued the matter after conferring with counsel and set a new briefing schedule for the motion. The Johnsons timely filed an opposition pursuant to that schedule. While a trial court has the discretion to refuse to consider late-filed papers, the court did not exercise its discretion to do so in this case. (Cal. Rules of Court, rule 3.1300(d).) Instead, it continued the hearing on the motion and set a new briefing schedule. The contention is thus meritless. Further, even if the Johnsons raised a legal argument on appeal that was not included in their opposition below, we would be permitted to consider it. (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244 [appellate court may consider legal theories first raised on appeal from sustaining of a demurrer].)

13

comply with those conditions.  "An option is an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option.  Since the optionor is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option." (*Simons v. Young* (1979) 93 Cal.App.3d 170, 182 (*Simons*).)  Absent waiver or estoppel (which, as discussed *post*, have no application here), a tenant seeking to invoke the right to renew a lease as permitted by a lease option "must apprise the lessor in unequivocal terms of his unqualified intention to exercise his option, within the time, in the manner and on the terms stated in the lease."  (*Bekins Moving & Storage Co. v. Prudential Ins. Co.* (1985) 176 Cal.App.3d 245, 251.)

A tenancy for a fixed term automatically terminates at the end of the term.  (*Camp v. Matich* (1948) 87 Cal.App.2d 660, 665 (*Camp*).)  If a tenant remains in possession of property after a lease term expires and the landlord accepts rent from the tenant, a month-to-month tenancy is created under the same terms as the original lease.  (Civ. Code, § 1945; see also *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820; *Dover Mobile Estates v. Fiber Form Prods.* (1990) 220 Cal.App.3d 1494, 1501.)  A landlord is permitted to terminate a month-to-month tenancy, or to change its terms, so long as the landlord provides the tenant with thirty days' notice.  (Civ. Code, § 1946.)

Here, the Johnsons' lease was for a term of 65 months, expiring on July 31, 2016.  The lease specified that to exercise the option to renew, the Johnsons were required to provide Dunn Investment with written notice of their intent to renew.  The

14

Johnsons concede they did not do so. Accordingly, the lease was not renewed and expired at the end of July 2016.

Because Dunn Investment accepted rent payments from the Johnsons following the expiration of the lease, the Johnsons became month-to-month tenants. The complaint alleges Dunn Investment offered the Johnsons a new lease, or a higher month-to-month rate, and began charging community area maintenance fees, in February 2019. Dunn Investment was allowed to make these changes so long as it gave the Johnsons 30 days' notice. The complaint does not allege Dunn Investment failed to provide the requisite notice. As a result, the Johnsons have failed to allege facts sufficient to state a claim that Dunn Investment breached the lease by attempting to terminate the lease, raise the rent, or charge a common area maintenance fee.

The Johnsons nevertheless argue their failure to provide written notice of their intent to exercise the option to renew the lease is not determinative. Rather, they contend their conduct between August 2016 and May 2019 communicated their intent to renew the lease for the additional five-year term and Dunn Investment either waived timely notice of the election to exercise the option or is estopped from asserting the requirement. The Johnsons base these contentions on the following alleged facts: they consistently paid monthly rent, including annual rent increases; Dunn Investment accepted the rent without protest through September 2019; Guandique told them they were great tenants who could stay as long as they liked; and they continued to keep aspects of the property operational. This argument for renewal by conduct is unavailing.

While it is true that a lessor may waive timely notice of an election to exercise an option or be estopped from asserting the

15

requirement (*Simons, supra*, 93 Cal.App.3d at 178-179), there is no waiver nor estoppel here. The Johnsons contend their actions of continuing to pay rent and continuing to maintain the property communicated their intent to renew. These actions, which amount to nothing more than a tenant's usual behavior, did not give Dunn Investment any reason to know they had purportedly renewed the lease. Nor do the Johnsons allege Dunn Investment made any representations upon which they relied in failing to give notice. The only statement attributed to Dunn Investment is Guandique's statement that the Johnsons were great tenants who could stay as long as they wanted. That statement, however, is not inconsistent with the month-to-month tenancy the Johnsons had following the expiration of the lease. Moreover, there is no allegation that Guandique's representation was anything more than a general statement or in any way related to the potential exercise of the Johnsons' option to renew the lease.

### 2. *The remaining claims also fail*

"'A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.' [Citation.]" (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 402.) To the extent that the Johnsons' claims regarding the roof and HVAC system survive the conclusion that the lease expired on July 31, 2016, the Johnsons nevertheless fail to state a claim for breach of contract because the terms of the lease demonstrate the Johnsons have not pled facts sufficient to establish all of the elements of a breach of contract claim.

16

Paragraph 7.2 of the lease provides Dunn Investment bears full responsibility for the repair of the surface and structural elements of the roof upon written notice that repair is necessary. However, paragraph 59 specifically provides the Johnsons agreed any damage to their property caused by roof leaks would be their responsibility.[4] Paragraph 8.8 also generally exempted Dunn Investment from liability for damage to the Johnsons' property stemming from a breach of the lease or ordinary negligence. (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 45, 48-49 [interpreting similarly worded clause].) The only damage the Johnsons alleged as a result of the leaky roof was property damage. Because they agreed Dunn Investment would not be liable for any property damage caused by issues with the roof, and did not allege Dunn Investment acted with anything beyond ordinary negligence, the terms of the lease—which control—demonstrate they cannot plead the roof caused any compensable damage. As a result, their breach of contract claim fails to the extent it is based on Dunn Investment's alleged failures with respect to the roof.

Paragraph 2.2 of the lease states Dunn Investment warranted the HVAC system was in good condition when the lease commenced in 2011. The HVAC system was further warrantied for 12 months. If the system failed during that period, Dunn Investment would have been responsible for rectifying the failure. Paragraph 7.1 of the lease provides the Johnsons were otherwise responsible for keeping the HVAC equipment in good condition and repair, including by entering

---

[4] Paragraph 59 suggests, and paragraph 8.8 expressly states, that the Johnsons' recourse for damage to their property was to submit a claim under their insurance policy or policies.

17

into service contracts for its maintenance. If the HVAC system could not be repaired for less than 50% of the cost of replacing it, Dunn Investment was required to replace it. The Johnsons would then be required to pay 1/144 of the cost each month.

The complaint alleges the HVAC system was not working and Dunn Investment eventually replaced it with a new, inferior system. The terms of the lease itself establish these allegations do not suffice to state a breach of contract claim. The lease makes the Johnsons responsible for the maintenance and general repair of the HVAC system. Dunn Investment was only required to replace the system if the cost of a repair was sufficiently expensive compared to the cost of a replacement. Though the complaint does not allege facts indicating Dunn Investment was required to replace the system, it alleges the system was, in fact, replaced. Once replaced, the Johnsons were, again, responsible for the maintenance and upkeep of the new system pursuant to the lease. The Johnsons assert the new HVAC system is insufficient for the property, but the lease does not specify what type of system must be installed in the property.[5] Even if the Johnsons could allege damage and could assert some claim against Dunn Investment related to its choice of replacement, it is not a breach of contract claim.

Additionally, paragraph 13.6 of the lease provides Dunn Investment was not to be deemed in breach of the lease unless it failed to perform a required obligation within a reasonable time, which it defined as at least 30 days after receipt of written notice. The complaint did not allege the Johnsons provided written

---

[5] The Johnsons thus failed to allege Dunn Investment's action or inaction constituted a breach of the lease.

18

notice of either the issues with the roof or the issues of the HVAC.

### C. *The Declaratory Relief Cause of Action*

The Johnsons' declaratory relief cause of action sought a court determination regarding the parties' rights and obligations regarding the lease.  The Johnsons argue the demurrer should have been overruled because the complaint alleged the existence of an actual and present controversy between them and Dunn Investment.  They claim a judicial declaration is necessary so they can ascertain their rights and obligations regarding the lease.

A demurrer is properly sustained as to a claim for declaratory relief that is "wholly derivative of" other non-viable causes of action.  (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794 [because facts did not support claim that PacifiCare violated statutes, "there are no grounds for granting an injunction or declaratory relief based on purported violations of those statutes"].)  In this case, the Johnsons' declaratory relief cause of action is wholly derivative of their breach of contract claim.  The only judicial declaration sought in the complaint related to the parties' rights and obligations under the lease, specifically whether it had been renewed, the rental rate to be paid by the Johnsons, whether Dunn Investment could charge maintenance fees, and Dunn Investment's obligations to maintain and repair the premises.  The breach of contract cause of action sought damages for alleged breaches of the lease based on the same conduct.  Because the breach of contract claim fails, the declaratory relief claim also fails.

19

*D.    Leave to Amend*

We review a trial court's denial of leave to amend for abuse of discretion.  (*Schifando*, *supra*, 31 Cal.4th at 1081.)  We reverse if there is a reasonable possibility a pleading can be cured by amendment.  (*Ibid.*; *Blank*, *supra*, 39 Cal.3d at 318.)  The plaintiff has the burden of demonstrating abuse of discretion by showing how the complaint can be amended to state a cause of action.  (*Schifando*, *supra*, 31 Cal.4th at 1081.)

The Johnsons' opposition below summarily asserted they were entitled to leave to amend, but it did not identify any additional facts they were prepared to allege.[6]  Dunn Investment argues this means the Johnsons are foreclosed from asserting facts demonstrating they are entitled to leave to amend on appeal.  To the contrary, a request for leave to amend may be made for the first time on appeal.  (*Jensen v. The Home Depot, Inc.* (2018) 24 Cal.App.5th 92, 97.)

We thus turn to the arguments in support of amendment that the Johnsons assert in their opening brief.  To meet their burden to show they could plead facts sufficient to state a cause of action the Johnsons were required to "submit a proposed amended complaint or, on appeal, enumerate the facts and

---

[6]    There is no record upon which we can determine whether the trial court abused its discretion below in declining to grant leave to amend.  The record on appeal does not include a reporter's transcript (or a settled or agreed statement) memorializing what transpired during the demurrer hearing.  Because we have no record demonstrating otherwise, we presume the trial court did not abuse its discretion in denying leave to amend in the first instance.  (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)

demonstrate how those facts establish a cause of action." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.) The Johnsons did not do the former, and their attempt at the latter is insufficient.

The Johnsons' appellate briefing asserts they could amend their complaint to allege (1) that they provided Dunn Investment with written notice of the roof and HVAC issues, (2) a nuisance cause of action, and (3) a negligent interference with economic relations cause of action. An amendment to allege the Johnsons provided written notice of the alleged breaches would not cure the larger defects with the breach of contract cause of action identified *ante*, and, as a result, do not render their cause of action viable. Further, though the Johnsons dutifully recite the elements of a nuisance and negligent interference claim, which they contend they could allege for the first time if granted leave to do so, their purported recitation of facts consist of nothing more than conclusory statements mirroring the elements of each cause of action. For example, as to the nuisance cause of action, the Johnsons assert Dunn Investment's failure to repair or replace the roof and HVAC system allowed an abnormally dangerous condition to persist, but they do not state any facts demonstrating either failure created a dangerous condition. As to the negligent interference claim, the Johnsons assert Dunn Investment's actions disrupted their business relationships with their customers, but they do not identify a specific prospective customer or business relationship that was disrupted or identify the manner of such disruption. Because the Johnsons did not identify any facts that would establish these purported new causes of action, they have not demonstrated there is a viable theory of amendment.

DISPOSITION

The judgment is affirmed.  Dunn Investment shall recover its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.


We concur:



MOOR, J.



KIM, J.